E.W. GROBBEL SONS, INC.,
Petitioner/Cross–
Respondent,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent/Cross–
Petitioner.

Nos. 96–6447, 96–6555.

United States Court of Appeals,
Sixth Circuit.

Decided May 4, 1999.

Sidney L. Frank, Patrick C. Hall, Frank & Stefani, Troy, MI, for Petitioner/Cross–Respondent.

Paul A. Ades, N.L.R.B. Office of the General Counsel, Linda Dreeben, John D. Burgoyne, Act.Dep.Ass.Gen.Counsel, Sonya Spielberg, N.L.R.B. Appellate Court Branch, Eric G. Moskowitz, Margery E. Lieber, N.L.R.B. Special Litigation Branch, Washington, DC, for Respondent/Cross–Petitioner.

Before: WELLFORD, NORRIS, and SILER, Circuit Judges.

## MEMORANDUM OPINION AND ORDER

WELLFORD, Circuit Judge.

This court entered an opinion on the multiple issues in this labor dispute initiated by Local 26 of the United Food and Commercial Workers Union. We remanded to the Board certain issues concerning Grobbel's polling of its employees and its refusal to execute a proposed collective bargaining agreement. We concluded, after directing the Board's reconsideration of these two issues based on our expressed concerns, that:

> We **REMAND** for reconsideration whether Grobbel violated the Act by polling its employees. Finally, we **REMAND** for further consideration whether the four months between Grobbel's offer and the Union's "acceptance" of that offer was reasonable, or whether intervening circumstances have made it unfair to hold Grobbel to its original offer. The Board must also consider whether differences existed between Grobbel's proposal and the Union's acceptance and, if so, whether the differences were material.

In other respects, we denied enforcement of the Board's order from which Grobbel had appealed.[1] We issued a mandate on September 22, 1998.

---

1. We disagreed with the Board that the discharge of Mr. Ludy was unlawful, and that the handling of Mr. Willis' vacation and vacation pay was unlawful.

Meanwhile, on July 7, Grobbel applied to the Board for an award of fees and expenses under the Equal Access to Justice Act ("EAJA"). The parties settled this claim without prejudice to Grobbel's right to file a renewed application limited to the issues on remand. Grobbel dismissed the July 7 EAJA claim based on that stipulation. After some proceedings before the Board on remand, the Union, as charging party, informed the Board that it wished to withdraw its claim with respect to the remaining issues. Accordingly, on December 14, 1998, the Regional Director dismissed the remaining issues set out in the original complaint.

Purportedly, on January 12, 1999, Grobbel mailed an EAJA application for fees and expenses to the court; it was marked filed on January 14, 1999. Grobbel also submitted that request by mail to the Board on January 12. The general counsel has advised us by letter, dated February 16, 1999, that the Board has denied the application as untimely. The basis for denial was that the application was not received until January 15, thirty-two days after the December 14, 1998 dismissal. The Board based its rejection on § 504(a)(2) of EAJA and its thirty-day period for pursuing an application for fees and expenses, and on § 102.111(b) of the Board's rules specifying a requirement of *receipt* within thirty days, citing *All Shores Radio Co.,* 286 NLRB 394, 396 (1987), aff'd, 841 F.2d 474 (2d Cir.1988).[2]

The Board opposed Grobbel's application filed in this court based upon (1) lack of jurisdiction (the Board is the only proper tribunal to consider the fee request); (2) substantial justification for the Board's position on the merits of the controversy; and (3) an excessive claim. We ordered Grobbel to show cause why we should not deny its application for lack of jurisdiction or untimeliness. Grobbel has responded, and the Board replied to that response.

We now discuss the contentions of the parties.

## I. TIMELINESS OF THE APPLICATION

■ The Board argues that the "final judgment" from which Grobbel had thirty days to make its application was June 9, 1998, and that time limits had long lapsed before Grobbel filed its application. Grobbel, on the other hand, argues that the dispositive date for measuring the thirty day period was the Board's order of December 14, 1998. Grobbel maintains that it made a timely filing in accordance with this court's standards.

First, Grobbel's argument, based on *Sullivan v. Hudson,* 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989), is that this court's June, 1998 remand was not a final resolution of the issues in the case. Rather, Grobbel asserts that the Board's December 14, 1998 dismissal order extinguished all appeal rights and finally disposed of all remaining claims. We have addressed a similar issue in *Buck v. Secretary,* 923 F.2d 1200 (6th Cir.1991). Citing *Sullivan v. Hudson, supra,* we held that "[r]emand is not the final judgment for EAJA purposes." *Id.* at 1204. We explained that "[i]f remand were a final judgment, the rule would require an application for fees before it was known whether the claimant was a prevailing party ... achieving a remand is not prevailing on the merits." *Id.* (citing *Hudson,* 109 S.Ct. at 2255).

Our remand order contemplated further administrative proceedings; we did not affirm, modify, or reverse the Board's findings and conclusions on the two important issues remanded. Under the principles of *Melkonyan v. Sullivan,* 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), we retained jurisdiction and on these issues did not establish Grobbel a prevailing party

**2.** In *All Shores Radio Co.,* the circuit court held that the thirty-day limit set out in § 504(a)(2) was mandatory and jurisdictional; it could not be extended by the Board. There was no discussion, however, about the Board's rule requiring receipt of a fee application within thirty days.

under EAJA. "We think it can be presumed that the court does intend to retain jurisdiction in such cases absent an express indication to the contrary." *Labrie v. Secretary,* 976 F.2d 779, 786 (1st Cir. 1992) (Judge, now Justice, Breyer on panel). *See also Peters v. Secretary,* 934 F.2d 693 (6th Cir.1991). Any other construction would work an unfairness to Grobbel and we do not adopt the construction of *Melkonyan* urged by the Board under the circumstances here.

■ The Board's Rule 102.111(b) is not applicable to filings in this court. The application was mailed on a Saturday and marked "filed" on Monday, January 14, 1998. We conclude that the application is deemed to have been submitted to this court within the thirty day period under 5 U.S.C. § 504(a)(2). We further conclude that Grobbel's application was properly submitted after the underlying merits of the remaining issues on remand were finally determined by the Board by virtue of its dismissal order of December 14, 1998 ("the action, or failure to act, by the agency upon which the adversary adjudication is based") 5 U.S.C. § 504(b)(1)(E).

The fees and costs application was therefore timely in this court and we have retained jurisdiction to consider it on the merits.

## II. SUBSTANTIAL JUSTIFICATION FOR THE AGENCY POSITION

■ Grobbel was the prevailing party as a consequence of the action of the Board on the two remanded issues. The charges were withdrawn. The general counsel exercised his discretion to act upon the request of the charging party. No one, therefore, after the Board's order of December 14, 1998, charged or contended that Grobbel was bound to accept, or even to consider, the Union's proposed contract. There was no longer a charge that Grobbel acted unlawfully in polling its employees. A litigant may attain prevailing party status if it obtains at least some relief on the merits of its position. *Farrar v. Hobby,* 506 U.S. 103, 110, 113 S.Ct. 566, 121

L.Ed.2d 494 (1992). We deem Grobbel to be a prevailing party on the remanded issues as a consequence of the general counsel's action and the Board's order of dismissal.

■ Section 504(a)(1) allows an attorney's fee award to a party prevailing in an adversary adjudication before a federal government agency such as NLRB unless the latter's position is "substantially justified" or special circumstances may render such an award unjust. *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

The Board's memorandum in opposition to Grobbel's application concedes (p. 15) that "when an EAJA application is considered by this Court, the agency normally bears the burden of demonstrating substantial justification." *Timms v. United States,* 742 F.2d 489, 492 (9th Cir.1984). We acknowledge the Board's position that this question should not be decided alone based upon the fact of dismissal of the complaint after remand. *See Kuhns v. Board of Governors,* 930 F.2d 39, 44 (D.C.Cir.1991).

### A. The Alleged Contract

■ We stated in our opinion of June 9, 1998:

Grobbel argues that the testimony of Franzè actually illustrates why the offer sent by the Union was not an "acceptance" of any prior company offer. First, Franzè testified that the agreements were contingent upon reaching a final agreement, and that Grobbel never agreed to incorporate the terms of the old contract into the new contract. In addition, two sentences regarding arbitration found in the "acceptance" were not discussed by the parties prior to the Union's sending the new proposed contract. Under these circumstances, we conclude that this issue should also be revisited. *See Pepsi–Cola Bottling Co. v. NLRB,* 659 F.2d 87, 89–90 (8th Cir. 1981) (reviewing the standard for deter-

mining whether an offer remains open for acceptance after an initial rejection).

The "final offer" was made by Grobbel on or about September 14, 1994, and the Union attempted to accept the offer on January 17, 1995, almost four months later. At the time the final offer was made, the strike had already begun and was about to conclude. Whether the lapse of four months constituted a "reasonable time" within the meaning of *Pepsi–Cola*, in light of all of the intervening events, is not clear and was not adequately considered by the Board. Also, it is unclear whether the Union was accepting the "final offer" of Grobbel without modification.

It was anything but clear to us, based upon the Union representative's own testimony, that an agreement had been reached during the turmoil over the strike and events before the strike. There was a long hiatus during negotiations after an offer of an agreement had been made but not accepted. That the union itself did not care to pursue the matter is a compelling circumstance. We are not persuaded by the Board that its position was substantially justified under the circumstances.

## B. The Polling of Employees

■ The predicate for the conclusion that the polling constituted an unfair labor practice was the determination that there was a "background of unfair labor practices" and "unremedied unfair labor practices." The question in this type of situation is whether the employer reasonably "lacked a genuine, reasonable uncertainty about whether [the Union] enjoyed the continuing support of a majority of unit employees." *Allentown Mack Sales v. NLRB*, 522 U.S. 359, 367, 118 S.Ct. 818, 139 L.Ed.2d 797 (1998). Did the Board refuse to "credit probative circumstantial evidence" on this question in this case? *See id.* at 368. Less than half of the employees' disavowal or expressed dissatisfaction with Union representation may be enough to constitute requisite "reasonable doubt" to warrant polling. *Id.* at 369.

We remanded this issue to the Board in light of the intervening decision in *Allentown*. We decided, moreover, that the decisions of the ALJ and of the Board were incorrect in holding that there had been an unfair labor practice strike and that certain other employer actions had been unfair labor practices which remained unremedied. Our own revisiting of this polling issue leads us to a conclusion that Grobbel had a sufficient basis to be " '*uncertain about*' the Union's retention of majority support" under all the circumstances. *Id.* at 371. The Board "is not free to prescribe what inferences from the evidence it will accept and reject, but must draw all those inferences that the evidence fairly demands." *Id.* at 378. It is probative for an employer to assess one employee's stated doubts about continued Union representation in light of the overheard and repeated comments about other employees' skepticism and reservations. *Id.* at 380. It is reasonable to assume that the abortive strike had its effect upon employee dissatisfaction with the Union. Thus, under the circumstances presented in this case, the Board's position that the polling was unlawful was not substantially justified.

## III. AWARD OF FEES AND EXPENSES

In light of our decision that we have jurisdiction in this case, that Grobbel is the prevailing party on the issues remanded to the Board, and that the Board's position was not substantially justified, we conclude also that the Board has not demonstrated any special circumstances to preclude an award of fees and costs. Ordinarily, we would remand to the Board for a determination of appropriate fees and costs, but we may place the Board in an awkward situation if we do so after its determination that Grobbel's application was received too late.

Based on the application filed in this court and the Board's response in opposition, we shall proceed to decide that issue as well. We find ourselves in agreement with the Board that Grobbel has requested

excessive fees. Applying 28 U.S.C. § 2412(d)(2)(A)(ii) and the amendment by Pub.L. No. 104–121 through 241(d)(2)(A) in 1996, as well as *Begley v. Secretary*,[3] 966 F.2d 196 (6th Cir.1992), we believe an adjustment to the requested fee is in order, and that it is appropriate for us to make this decision. *See Dole v. Phoenix Roofing*, 922 F.2d 1202, 1208 (5th Cir.1991).

We have examined the fee rates and costs requested and the Board's response carefully. We apply the basic $125 rate, as adjusted, after March 29, 1996. *See Caremore, Inc. v. NLRB*, 150 F.3d 628, 630–31 (6th Cir.1998). We award $6,000 total for allowable fees and expenses for the remand period to counsel for Grobbel. This award, of course, is in addition to the settlement amount previously negotiated by the parties.

The Board is, therefore, **ORDERED** and **DIRECTED** to reimburse Grobbel's counsel, Frank, Stephens, Horan & Hall, the sum of $6,000. Judgment on the issues before us is rendered to respondent Grobbel.

---

**3.** *Begley* interpreted *Chipman v. Secretary*, 781 F.2d 545 (6th Cir.1986), not "to forclose any upward adjustment from the statutory *ceil-* *ing* " based upon factors such as inflation or cost of living considerations. *Begley*, 966 F.2d at 200 (emphasis added).