**Joseph ELFELT, Joan F. Elfelt, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Roy James Palmer, Vicki Lynn Palmer, Defendants–Appellees.**

No. 00–1593.

United States Court of Appeals, Sixth Circuit.

Sept. 27, 2002.

Before DAVID A. NELSON and MOORE, Circuit Judges, and KATZ, District Judge.*

DAVID A. NELSON, Circuit Judge.

This is an appeal from a summary judgment for the United States in an action to quiet the title to a Michigan farm that had been sold for delinquent real estate taxes after becoming subject to a federal income

tax lien. Within the five-year period spoken of in Mich. Comp. Laws § 211.73a, the holder of the tax deed had caused right-of-redemption notices to be served on both the delinquent taxpayer, as the last owner in the regular chain of title, and on the United States, as a lienholder. But the notice (the form of which was that prescribed by Mich. Comp. Laws § 211.73a[1]) was not served on the United States until more than nine months after the return of service upon the delinquent taxpayer.

Subject to a possible question as to federal jurisdiction, the central issue in the appeal concerns the timeliness, under Mich. Comp. Laws § 211.73a, of an attempt by the taxpayer to redeem his farm by tendering the amount of money specified in the redemption notice. The tender was made within six months following the return of service of the notice on the United States, but more than six months after the return of service of the notice on the taxpayer. If the tender was good, the federal lien survived; if bad, the lien did not survive.

In November of 2001, pursuant to Rule 7.305(B) of the Michigan Court Rules of 1985, we certified to the Michigan Supreme Court the following question of law:

"Did the enactment of M.C.L. § 211.73a abolish the principle of Michigan law that the six-month limitation period for exercising the tax sale redemption rights prescribed by M.C.L. §§ 211.140 and 211.141 begins to run as to any person entitled to notice of such rights only upon the filing of a return of service of notice upon all persons so entitled?"

---

* The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

1. The redemption notice tells the recipient this, among other things: "You are entitled to a reconveyance of this property within 6 months after return of service of this notice, upon payment to the treasurer of the county in which the property is located, of all sums paid for the tax sale purchase, together with 50% in addition, and the fees of the sheriff ...."

In May of 2002 the Michigan Supreme Court entered an order declining to answer the certified question. If the Supreme Court had chosen to accept certification, we believe that the Court would have been constrained to answer the question "yes." It is our belief, in other words, that in the context of this case the Michigan Supreme Court would have said that the six months given the delinquent taxpayer for the exercise of his right of redemption began to run as soon as there was a return of service of the redemption notice upon him, notwithstanding the nine-month lag in the return of service upon the United States. The summary judgment entered in favor of the United States will be reversed.

I

The real estate in question is an 80–acre farm located in Cheboygan County, Michigan. Defendant Roy James Palmer, who acquired the farm by inheritance, has lived there all his life.

Mr. Palmer was married for a time to defendant Vicki Lynn Palmer, but the marriage ended in a divorce that apparently terminated her interest in the property. (Mrs. Palmer failed to appear in the quiet title action, and a default was entered against her by the district court.)

Notices of federal tax liens against the property were filed by the United States to secure claims of unpaid federal income taxes for 1986, 1987, 1990, and 1991. The assessments giving rise to these liens have been reduced to judgment in the amount of $24,283.34.

Mr. Palmer failed to make timely payment of the 1989 and 1990 property taxes on the farm. In 1992, following a tax sale for the 1989 taxes, the State of Michigan issued a tax deed to Conifer, Inc. The tax deed was subsequently purchased by plaintiff Joseph Elfelt. (Mr. Elfelt presumably recovered his investment after December of 1996, when, as we shall see, Mr. Palmer redeemed the farm from the 1992 tax sale by a cash payment made to the county treasurer.)

A tax sale for the 1990 property taxes was conducted in 1993, and Conifer, Inc., obtained a tax deed in connection with this sale as well. This deed too was sold to Mr. Elfelt. Although Mr. Palmer apparently sought at one point to satisfy his delinquency on the 1990 taxes, the county treasurer applied the payment to 1991 taxes instead.

In October of 1996, at Mr. Elfelt's instance, a Cheboygan County deputy sheriff served Mr. Palmer with a notice advising him of his right to a reconveyance of the land "within 6 months after return of service of this notice" upon payment of $1,619.15 in respect of the 1989 taxes and $1,577.92 in respect of the 1990 taxes, together with sheriff's fees. (Pursuant to Mich. Comp. Laws § 211.141, which prescribes the formula embodied in the § 211.140 redemption notice, these figures included the amounts paid at the tax sales and an additional 50 percent.) A completed return of service was filed with the Cheboygan County Treasurer on November 5, 1996.

Mr. Palmer made the prescribed payment in respect of the 1989 taxes in December of 1996, within six months of the return of service on him. No corresponding payment was made for the 1990 taxes.

In August of 1997, more than nine months after service of the redemption notice on Mr. Palmer, a similar notice was served on the United States Internal Revenue Service by a Wayne County deputy sheriff. (Because Mr. Palmer had redeemed the farm from the first tax sale by this time, the notice to the Internal Revenue Service dealt only with the 1993 tax

sale for 1990 taxes.) A completed return of service of the notice on the IRS was filed with the Cheboygan County Treasurer on August 25, 1997. The United States subsequently made a tender to the county treasurer in an amount equal to the 1990 taxes, but did not include the additional 50 percent called for by Mich. Comp. Laws § 211.141. The United States concedes that this tender was not effective.

On January 21, 1998—a date within six months after the filing of the return of service of the redemption notice upon the United States, but more than six months after the return of service of Mr. Palmer's notice—Mr. Palmer, through his accountant, mailed the Cheboygan County Treasurer a check for $5,377.02. This sum was intended to effect a redemption from the tax sale for the 1990 taxes and to cover arrearages for two subsequent years as well. The county treasurer returned the check on the ground that Mr. Palmer's redemption period with respect to 1990 taxes had expired on May 5, 1997.

Mr. Elfelt and his wife subsequently filed the present quiet title action in federal district court, naming the Palmers and the United States as defendants.[2] Mr. Palmer appeared *pro se*, and he has relied largely on the United States to protect his interests. (If Mr. Palmer lost his right to redeem, the United States acknowledges that its tax lien was lost as well.)

Cross-motions for summary judgment were filed by the Elfelts and the United

**2.** According to the complaint, federal jurisdiction was based on 28 U.S.C. §§ 1346 and 2410 and 26 U.S.C. § 7425. The government's appellate brief tells us that the district court had jurisdiction over the complaint by reason of 28 U.S.C. §§ 1346(f) and 2410, and adds that jurisdiction over the government's subsequently-filed counterclaim existed under 26 U.S.C. § 7402(a) and 28 U.S.C. § 1345.

At first blush, we see no reason to question the government's assertion that the district court had jurisdiction with respect to the counterclaim; § 1345 provides that "the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States," and the counterclaim may well be such a proceeding. As far as jurisdiction over the Elfelts' case is concerned, however, we are somewhat more dubious.

We find nothing in 28 U.S.C. § 1346 that gives the district court jurisdiction over the Elfelts' quiet title action. The subsection cited by the United States, § 1346(f), provides only that "[t]he district courts shall have exclusive original jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States." The Elfelts' action is not an action under § 2409a, which allows the United States to be named as a defendant in a suit to adjudicate legal title to real property in which the United States claims an interest "other than a securi-

ty interest ...." The lien is clearly a security interest.

Section 2410(a) provides that the United States may be named a party in any suit to quiet title to property on which the United States has or claims a lien. Most authorities, however, view this as a waiver of sovereign immunity, pure and simple, and not a positive grant of jurisdiction. See, *e.g., McNeill v. Franke*, 171 F.3d 561, 563 (8th Cir.1999); *Harrell v. United States*, 13 F.3d 232, 234 (7th Cir.1993); *Shaw v. United States*, 331 F.2d 493, 496 (9th Cir.1964); and 14 Charles A. Wright, et al., Federal Practice and Procedure § 3656 (3d ed.1998). But cf. *United States v. Morrison*, 247 F.2d 285, 290 (5th Cir.1957), where the Fifth Circuit took the opposite view.

In *Shaw*, the Ninth Circuit held that the federal courts have jurisdiction over cases of this sort by reason of 28 U.S.C. § 1340, which gives the district court original jurisdiction over "any civil action arising under any Act of Congress providing for internal revenue ...." Our own circuit does not seem to have opined on the matter.

The jurisdictional issues have not been briefed here, and we are reluctant to attempt a definitive resolution at this point. Because jurisdiction probably exists as to the counterclaim, at a minimum, and because the case must be remanded in any event, we leave the jurisdictional nuances for the district court to address in first instance.

States. After hearing oral argument on the motions, the district court delivered a bench ruling in which the court declined to follow *Halabu v. Behnke*, 213 Mich.App. 598, 541 N.W.2d 285 (Mich.Ct.App.1995)— an opinion directly contrary to the position taken by the United States and Mr. Palmer in the case at bar—on the strength of a belief that if given the opportunity, the Michigan Supreme Court would reject *Halabu*. In March of 2000 the district court made an entry memorializing its bench ruling in a final judgment that granted the United States' motion for summary judgment, protected certain equitable rights of the Elfelts, and denied the Elfelts' summary judgment motion. The Elfelts perfected a timely appeal, and the case was argued before us in September of 2001. Certification to the Michigan Supreme Court followed. The Supreme Court having declined to accept certification, the matter is now ripe for decision by this court.

## II

Prior to 1939, as all parties agree, the Michigan courts would have held that Mr. Palmer's six-month redemption period began to run only when there was a return of service of the redemption notice upon the United States, the last claimant to be served. A line of authority stretching back to *White v. Shaw*, 150 Mich. 270, 114 N.W. 210, 210–11 (Mich.1907), made it clear that statutory redemption rights could not be cut off "piecemeal;" not until the filing of proof of service on all parties entitled to notice of their redemption rights under Mich. Comp. Laws § 211.141, that is, did the six-month time limit on any individual party's right of redemption begin to run. See, *e.g., G.F. Sanborn Co., v. Richter*, 176 Mich. 562, 142 N.W. 755, 756 (Mich.1913); *McVannel v. Pure Oil Co.*, 262 Mich. 518, 247 N.W. 735, 736 (Mich.

1933); *Brousseau v. Conklin*, 301 Mich. 241, 3 N.W.2d 260 (Mich.1942).

In 1939, however, Michigan's General Property Tax Act was amended by the addition of a new § 73a, the second sentence of the second paragraph of which read in part as follows:

"No person who has himself been properly served with such notice and failed to redeem from such sale in accordance with the provisions of the general tax law, within the period herein specified, shall thereafter be entitled to question or deny in any manner the sufficiency of such notice upon the ground that some other person or persons entitled to notice was not also served therewith . . . ." Public Act 52, Michigan Public Acts of 1939.

With changes made by Public Act 385 of the Michigan Public Acts of 1976, the sentence, as codified in the second paragraph of Mich. Comp. Laws § 211.73a, now says this:

"A person who has himself been properly served with notice and failed to redeem from a sale in accordance with this act, within the period herein specified, shall not thereafter be entitled to question or deny in any manner the sufficiency of notice upon the ground that some other person or persons entitled to notice was not also served."

How does this language apply to the facts of the case before us? For the most part, we believe, there is no possible room for dispute. Mr. Palmer was properly served with notice in October of 1996. The notice told him in plain English that he had six months after the return of service within which to redeem the property. A completed return of service was filed in November of 1996. Mr. Palmer "failed to redeem from [the tax] sale" within the six months that immediately followed the filing of the return of service.

So if six months is "the period herein specified," as that phrase is used in the statute, the statute makes it plain that the notice received by Mr. Palmer was sufficient to bar him from redeeming the property after the six months had run, notwithstanding the fact that the United States, which was also entitled to notice, was not served until after the expiration of Mr. Palmer's six months.

When § 73a of the General Property Tax Act refers to the period "herein" specified, the context of the word and the logic of the sentence make it fairly obvious, we believe, that what is being talked about is the period specified in the act for redeeming property from a sale. This is the six-month period specified in § 141 of the act—the same six-month period that a delinquent taxpayer is told about in the redemption notice prescribed by § 140 of the act.

There is another possibility, however. Section 73a of the act begins with a sentence which says, among other things, that the purchaser of a tax title will be barred by another claimant's adverse possession over a period of five years after the purchaser is entitled to a deed, and will also be barred by a failure to make a bona fide attempt to give notice of redemption rights within the five-year period. Several other sentences of § 73a also speak of the five-year period within which the purchaser of a tax title must act. It is conceivable, if unlikely, that when the second sentence of the second paragraph of § 73a refers to a delinquent taxpayer's failure "to redeem from a sale in accordance with this act, within the period herein specified," it is referring to the five-year period in which

§ 73a says the purchaser of a tax title must act.

The question of which period is the one "herein" specified was squarely addressed by the Court of Appeals of Michigan in *Halabu v. Behnke*, the case mentioned in our account of the disposition of the Elfelts' claim by the district court. By a vote of two to one, the *Halabu* court rejected the notion that "the period herein specified" for redemption by a person who has been served with notice is the five years mentioned elsewhere in § 73a. Citing the principle of construction that requires courts to "give effect to every phrase, clause, and word" in a statute, the majority held "that 'the period herein specified' refers to the six-month period in § 140." *Halabu*, 541 N.W.2d at 287. The dissenting judge, citing the same canon of statutory construction, maintained that the phrase "within the period herein specified" should be construed as referring to the five-year period.

As the dissenting judge correctly noted, his construction is consistent with the holding in *André v. Fink*, 180 Mich.App. 403, 447 N.W.2d 808 (Mich.Ct.App.1989) (per curiam). The opinion in *André* contains no analysis of § 73a, however, and gives no reason for concluding that "the period herein specified" should be read as a reference to the five-year period and not to the six-month period. The opinion gives no indication, indeed, that the *André* panel was even aware of the existence of this issue.

The Michigan Supreme Court has never resolved the conflict between *Halabu* and *André*.[3] Post-*Halabu* decisions of the

---

**3.** *Geraldine v. Miller,* 322 Mich. 85, 33 N.W.2d 672 (Mich.1948), contains language consistent with the result subsequently reached in *André*, but there is no discussion of § 73a in *Geraldine* and the end result in that

case would have been the same whether or not § 73a had been deemed to revoke the anti-piecemeal rule. The opinion in *St. Helen Resort Ass'n v. Hannan,* 321 Mich. 536, 33 N.W.2d 74 (Mich.1948), says that the 1939

Michigan Court of Appeals, however, have uniformly followed *Halabu*. See *Ottaco, Inc. v. Gauze*, 226 Mich.App. 646, 574 N.W.2d 393, 397 (Mich.Ct.App.1997); *Burkhardt v. Bailey*, 2001 WL 1134634, No. 223706 (Mich.Ct.App.2001); *Fognini v. Verellen*, 2001 WL 1044805, No. 217791 (Mich.Ct.App.2001); and *Walrath v. Trees, Inc.*, 2002 WL 482566, No. 225007 (Mich. Ct.App.2002).[4]

We can see no good reason why the Michigan Supreme Court would repudiate the result reached in *Halabu* in favor of the result advocated by the judge who dissented in that case. The dissent's construction of the critical sentence in § 73a—the sentence beginning "A person who has himself been properly served with notice and failed to redeem from a sale in accordance with this act, within the period herein specified"—mixes apples and oranges, in our view. As a grammatical matter, the subject of the sentence is the "person who has himself been properly served with notice," not the person who caused the notice to be served—and the five-year limitations period prescribed in the first paragraph of § 73a pertains to the latter, not the former.

It should make no difference, as far as we can see, that the six-month period in which the recipient of a statutory notice may redeem his property is specified in §§ 140 and 141 of the act and not in § 73a. The sentence we are construing, after all, places the words "within the period herein specified" immediately after the words

"this act"—and it seems perfectly reasonable to read "herein specified" as meaning "specified in this act."

Under the construction urged by the *Halabu* dissent, we should have to read the sentence as if it said this:

"A person who has himself been properly served with notice and failed to redeem from a sale in accordance with this act, within the period specified in this section of the act for various actions to be performed by the purchaser at a tax sale, shall not thereafter be entitled to question or deny in any manner the sufficiency of the notice upon the ground that some other person or persons entitled to notice was not also served."

With respect, we are bound to say that such a construction strikes us as more than a little strained.

In defense of his position, the *Halabu* dissenter claims that the majority's construction turns the phrase "within the period herein specified" into surplusage. But does it?

Here is what the dissent says:

"The words 'in accordance with this act' refer to The General Property Tax Act, M.C.L. § 211.1 *et seq.*; M.S.A. § 7.1 *et seq.*, which generally provides that the redemption period in a case such as this is six months. See § 140 M.C.L. § 211.140; M.S.A. § 7.198. Construing the immediately following 'within the period herein specified' as also meaning a

---

amendment "did not change the statutory requirements of the service of the notice of redemption," *id.* at 78, but the question of whether the anti-piecemeal rule had been repealed was not at issue in that case. *Brousseau v. Conklin*, 301 Mich. 241, 3 N.W.2d 260 (Mich.1942), reaffirmed the anti-piecemeal rule; although it was not decided until 1942, however, that case involved the General Property Tax Act as it stood prior to the 1939 amendment.

4. Because of a Michigan Supreme Court Administrative Order issued in 1990, the published decision in *Halabu* is binding in subsequent appeals heard by intermediate appellate court panels anywhere in the state. See M.C.R. 7.215(I). The pre–1990 decision in *André*, by contrast, was not binding on the panel that decided *Halabu*.

six-month period renders this phrase itself surplusage." *Halabu*, 541 N.W.2d at 289 (Smolenski, J., dissenting).

This argument depends on the proposition that the words "in accordance with this act" relate not only to the action that must be taken to accomplish a redemption,[5] but also to the time period in which the redemption must take place.[6] To our minds, at least, it is far from self-evident that the drafters of § 73a intended thus to conflate the "how" of redemption with the "when" of redemption. It would certainly not astonish us to learn that the drafters intended their words to be understood as saying this:

"A person who has himself been properly served with notice and failed to redeem from a sale in accordance with the provisions of this act for paying the county treasurer 150% of the tax sale purchase price, within the six-month period specified in this act for making such payment, shall not thereafter be entitled to question or deny in any manner the sufficiency of notice upon the ground that some other person or persons entitled to notice was not also served."

Such a construction, unlike the construction urged in the *Halabu* dissent, does not strike us as the least bit strained.

If we are correct in thinking that the *Halabu* majority's interpretation of the statute is a reasonable one, the federal courts are bound to follow it absent "persuasive data" that the Michigan Supreme Court would adopt another interpretation. As the United States Supreme Court declared in *West v. American Telephone & Telegraph Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940),

"Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."

See also *Hicks v. Feiock*, 485 U.S. 624, 630 n. 3, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988), and *Hampton v. United States*, 191 F.3d 695, 702 (6th Cir.1999). We said in the latter case that a federal court "should presume the Michigan Supreme Court would agree [with a considered judgment of the Michigan Court of Appeals] unless it[']s *clear* the Michigan Supreme Court would likely disagree with the Michigan Court of Appeals." *Hampton*, 191 F.2d at 702 (emphasis supplied). The presumption should be particularly strong, we believe, where the Supreme Court was offered an opportunity to disagree with the intermediate appellate court and, as here, declined the offer.

Is there any persuasive datum which makes it "clear" that *Halabu* would probably be rejected if the Michigan Supreme Court were to determine the proper reading of the second sentence of the second paragraph of Mich. Comp. Laws § 211.73a? The only conceivable candidate is the pre-*Halabu* decision in *André*

---

**5.** See Mich. Comp. Laws § 211.141, which speaks of "[paying] the treasurer of the county in which the land is situated the amount paid for the purchase [at the tax sale], together with an additional 50%, and personal or substituted service fees . . . ."

**6.** See Mich. Comp. Laws § 211.140, which provides that a writ of assistance for possession of property purchased at a tax sale shall not be issued until six months after the filing of a return of service of the statutory notice. Similarly, Mich. Comp. Laws § 211.141 provides that a person with an estate in the property is entitled to a release and quitclaim from the purchaser at the tax sale if the redemption payment is made within six months after the filing of the return of service.

*v. Fink.* As we have seen, however, the *Fink* opinion never so much as mentions the second sentence of the second paragraph of Mich. Comp. Laws § 211.73a. For all we can tell from the opinion, to repeat, the *Fink* panel was unaware of the provision's existence.

The *Halabu* panel, by contrast, rested its considered judgment on a reasoned analysis of the relevant statutory language. Chief Judge Doctoroff, who wrote for the court in *Halabu*, went through an extensive exegesis of the pertinent statutory text (and one of the major canons of statutory construction) before stating the court's holding in this succinct passage:

> "In order to give meaning to the second sentence in the second paragraph in § 73a, and to differentiate between that sentence and the second sentence in the first paragraph, we hold that 'the period herein specified' refers to the six-month period in § 140." *Halabu,* 541 N.W.2d at 287.

One may quarrel with Chief Judge Doctoroff's reasoning, but his conclusion as to the meaning of the statute is certainly no more problematic than the conclusion reached by the dissenting judge. And the *Halabu* opinion sparkles as a model of clarity in comparison to the per curiam opinion in *Fink,* which leaves one wondering whether its anonymous author even understood what the statutory issue was. *Fink,* in our opinion, is simply not a persuasive indicator of how the Michigan Supreme Court would construe the second sentence of the second paragraph of Mich. Comp. Laws § 211.73a.

The judgment entered herein by the district court is **REVERSED**, and the case is **REMANDED** for further proceedings not inconsistent with this opinion.

MOORE, Circuit Judge, concurring.

I join all of the majority opinion except for footnote two. I believe that we must determine whether federal subject matter jurisdiction exists before proceeding further. I would hold that the district court had jurisdiction over the complaint pursuant to 28 U.S.C. §§ 1340 and 2410(a).