**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 05a0754n.06

Filed: August 26, 2005

**No. 04-1689**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JOSEPH ELFELT, JOAN F. ELFELT, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT COURT |
| v. | ) | FOR THE EASTERN DISTRICT |
| | ) | OF MICHIGAN |
| UNITED STATES OF AMERICA, | ) | |
| ROY PALMER, VICKI LYNN | ) | |
| PALMER, | ) | OPINION |
| | ) | |
| Defendants-Appellees. | ) | |
| _____ | ) | |

Before: MOORE and COLE, Circuit Judges, and WISEMAN,[*] District Judge.

**Thomas A. Wiseman, Jr., District Judge.** Joseph Elfelt and Joan Elfelt (collectively "the Elfelts"), plaintiffs-appellants, filed a quiet title action against Roy Palmer, Vicki Palmer, and the United States of America, defendants-appellees, in the U.S. District Court for the Eastern District of Michigan. After the suit was resolved in their favor, the Elfelts filed an application for fees and other expenses under the Equal Access to Justice Act ("EAJA"), a motion for excess costs and sanctions under 28 U.S.C. §1927 and the court's inherent authority, and a motion for Rule 11 sanctions. The district court issued an order denying the Elfelts' application and motions, and this

---

[*]The Honorable Thomas A. Wiseman, Jr., United States District Court for the Middle District of Tennessee, sitting by designation.

timely appeal followed. For the reasons set forth below, we **AFFIRM** the district court's order in the entirety.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Roy James Palmer ("Palmer") owned an eighty-acre family farm in Cheboygan County, Michigan. Because Palmer had failed to pay the 1989 and 1990 property taxes on the farm, the State of Michigan conducted two tax sales and issued two tax deeds, one for the 1989 property taxes and the other for the 1990 taxes. Both tax deeds were sold to Conifer, Inc., who later sold the deeds to the Elfelts. Joseph Elfelt has been in the business of purchasing Michigan tax certificates and tax deeds for some eighteen years. The Elfelts paid $1,373 for the 1990 tax deed.

Under Michigan law, the Elfelts were required to give notice of the right to redeem to all interested parties. On October 19, 1996, the Elfelts served notice on Palmer. The notice indicated that Palmer could redeem his farm within six months from the date of the return of service of the notice by paying to the County Treasurer $1,619 with respect to the 1989 taxes and $1,578 with respect to the 1990 taxes, plus sheriff's fees of $31. A completed return of service was filed with the Cheboygan County Treasurer on November 5, 1996. Palmer made the prescribed payment with respect to the 1989 taxes on December 30, 1996, which was within the redemption period, but did not pay the 1990 taxes.

Although the United States had recorded two notices of federal tax liens against the farm,[1] and therefore was an interested party for the right-to-redeem notice purposes, the Elfelts did not

---

[1]Notices of federal tax liens against the property were to secure claims of Palmer's unpaid federal income taxes for 1986, 1987, 1990, and 1991. The assessments giving rise to these liens have been reduced to judgment in the amount of $24,283.34.

serve any notice on the United States at that time. In August 1997, nine months after the return of service upon Palmer, the Elfelts served notice on the United States. A completed return of service of the notice on the United States was filed with the Cheboygan County Treasurer on August 25, 1997.

Several attempts were made by the United States and Palmer to redeem the farm. First, upon receipt of the Elfelts' notice, the United States made a tender to the County Treasurer in an amount equal to the 1990 taxes, but did not include the additional fifty percent required by Michigan law. The United States concedes that this tender was not effective.

Palmer made two attempts to redeem the property. First, on August 8, 1995, Palmer tendered $1,573 to the Cheboygan County Treasurer. In his affidavit, Palmer testified that when he was served with notice of the tax lien for the 1990 taxes, he went to the County Treasurer's office to pay the taxes and told the clerk that he wanted to pay for the 1990 taxes. The clerk told Palmer that he had to pay the tax lien holder directly but took his money and applied the money to the 1991 taxes. Palmer testified that he was confused.[2] (Palmer Aff ¶ 8, J.A. at 46.) Later in a hearing before the district court, Palmer testified that in 1995 he went up to the courthouse to pay the taxes and told "them" he wanted to pay the most delinquent taxes, which were for 1989. (Hr'g Tr. on Mot. Summ.

---

[2]In his September 15, 1998 affidavit, a hearing before the district court on December 9, 1999, and his February 27, 2003 deposition, Palmer consistently testified he was confused by the whole process and was not sure what was going on. At the December 9, 1999 hearing, Palmer testified that he was born on the farm at issue, was raised there and had no education. (Hr'g Tr. on Mot. Summ. J. of 12/09/99, J.A. at 845.) His mother passed away when he was two years old and his sister, who had a birth defect, got better education and took care of the taxes until she passed away. (*Id*.) After she passed away, Palmer had trouble taking care of the taxes by himself. (*Id*. at 846.) When he finally realized that he "was in big trouble," he hired an accountant. (*Id*.)

J. of 12/09/99, J.A. at 846.) He testified, "they took my money, made out a receipt and said it would have to be for 1991." (*Id.*)

Second, on January 21, 1998, a date within six months after the return of service of the redemption notice upon the United States but more than six months after the return of service of notice on him, Palmer, through his accountant, mailed the Cheboygan County Treasurer a check for $5,377.02. This sum was intended to effect a redemption from the tax sale for the 1990 taxes and to cover arrearages for two subsequent years as well. The County Treasurer returned the check on the ground that Palmer's redemption period with respect to the 1990 taxes had expired on May 5, 1997.

The Elfelts subsequently filed this suit to quiet title naming Roy James Palmer, Vicki Lynn Palmer and the United States as defendants.[3] Palmer appeared *pro se* and relied largely on the United States to protect his interests. It is undisputed that if Palmer lost his right to redeem, the United States would lose its tax lien as well.

The United States moved for summary judgment arguing that, because Palmer had tendered payment to the County Treasurer within the six months of the date of the return of service of the last right-of-redemption notice to an interested party, *i.e.*, the United States, he had timely redeemed his property. On that basis, the United States argued that the federal tax lien on the property survived. In so arguing, the United States relied on the language of the Michigan statute which provided that the redemption period runs from the date of the return of service showing that all interested parties

---

[3]Roy James Palmer was married to Vicki Lynn Palmer for a time, but the marriage ended in a divorce, which terminated her interest in the property. Vicki Palmer failed to appear in the quiet title action, and a default judgment was entered against her by the district court.

have been served with notice. The United States further argued that, under Michigan case law, the right of redemption remained open to all interested parties so long as it remained open to any one party. The United States acknowledged that a divided panel of an intermediate state court had applied a different rule in *Halabu v. Behnke*, 541 N.W.2d 285 (Mich. Ct. App. 1995), but argued that the *Halabu* panel had applied an inapposite statute to reach a conclusion contrary to long-standing Michigan precedent. The Elfelts also moved for summary judgment arguing that Palmer's redemption period had expired six months after the service of notice on him regardless of when notice was effected upon the United States.

The district court, via Judge Victoria Roberts for the Eastern District of Michigan, declined to follow *Halabu* and granted summary judgment in favor of the United States. The ruling was based on the district court's belief that the Michigan Supreme Court, if given the opportunity, would overrule *Halabu*.

After the final judgment was entered in favor of the United States, the Elfelts filed their first appeal to this Court. In November 2001, this Court certified to the Michigan Supreme Court the following question of law:

> Did the enactment of M.C.L. § 211.73a abolish the principle of Michigan law that the six-month limitation period for exercising the tax sale redemption rights prescribed by M.C.L. §§ 211.140 and 211.141 begins to run as to any person entitled to notice of such rights only upon the filing of a return of service of notice upon all persons so entitled?

*Elfelt v. United States*, No. 00-1593, 47 Fed. Appx. 386, 387 (6th Cir. Sept. 27, 2002).

After the Michigan Supreme Court declined to answer the certified question, this Court issued an unpublished opinion, *Elfelt*, 47 Fed. Appx. 386, reversing the district court's judgment in

favor of the United States and remanding the case.

In the opinion, the Court first raised a jurisdictional issue and instructed the district court to address it at first instance on remand.[4] Then the Court turned to the issue of whether Palmer's 1998 tender was effective.

After several amendments, the second paragraph of Michigan Compiled Laws § 211.73a provides that:

> A person who has himself been properly served with notice and failed to redeem from a sale in accordance with this act, within the period herein specified, shall not thereafter be entitled to question or deny in any manner the sufficiency of notice upon the ground that some other person or persons entitled to notice was not also served.

Mich. Comp. Laws § 211.73a (2005).

Accordingly, this Court held that there is no possible room for dispute as to when the "period herein specified" would start to run. The Court, however, found that it was unclear whether the specified period was six months or five years.[5] To resolve this question, the Court then turned to *Halabu*. In *Halabu* a Michigan Court of Appeals panel, by a vote of two to one, held that the period specified for redemption by a person who has been served with notice is six months. The dissenting opinion relied on *Andre v. Fink*, 447 N.W.2d 808 (Mich. Ct. App. 1989), and concluded that the

---

[4]The Court questioned whether the district court had jurisdiction over the Elfelts' quiet title action. However, because the Court found that jurisdiction probably existed as to the United States' counterclaim against the Elfelts at a minimum and because the case was to be remanded in any event, the Court instructed the district court to address the issue in first instance on remand. *Elfelt*, 47 Fed. Appx. at 389 n.2.

[5]Five years is the period of time within which the purchaser has to give the required notice of reconveyance under section 73a of the General Property Tax Act, Mich. Comp. Laws § 211.73; Mich. Stat. Ann. § 7.119.

6

specified period is five years.

Finding that the *Halabu* majority's interpretation of the statute is a reasonable one and that there was no persuasive data that make it clear that the Michigan Supreme Court would overrule *Halabu*, this Court held that the federal courts are bound to follow *Halabu* and reversed the district court's judgment. The case was remanded for further proceedings not inconsistent with the Court's opinion.

On remand, the United States raised the question of whether payment for the 1990 taxes had been properly tendered in 1995 but had been misapplied to a different tax year by the County Treasurer. In response, the Elfelts argued that the case had been remanded for the sole purpose of resolving the jurisdictional question raised by this Court. Nonetheless, the district court, via Judge David Lawson, allowed the parties to reopen discovery regarding the 1995 tender.

Depositions of Palmer and the Cheboygan County Treasurer were taken. In his deposition, Palmer testified that in 1995 he tried to redeem the 1989 taxes but the clerk at the County Treasurer's office told him the money should be applied to the 1991 taxes. He testified that he was confused because he thought he should be able to pay the 1989 taxes and that he did not want to pay more taxes on that day because he did not want the clerk to put the money somewhere else. Palmer further testified that the clerk did not tell him why she could not accept the money for the 1989 taxes and just came up with the year 1991. Palmer also testified that he asked to pay for the 1989 taxes because he thought he would have to pay the delinquent taxes in order.

Conversely, Linda Cronan, the Cheboygan County Treasurer testified in her deposition that the County Treasurer's office has a long-standing policy of advising the taxpayers if the office is

7

aware of any prior years that are redeemable by the taxpayers or of any prior delinquent years for which they should pay taxes. If the taxpayers insist that they want to pay a different year, then the office applies the funds to the year for which the taxpayers request payment.

Once again, cross-motions for summary judgment were filed. The United States supported its motion with Palmer's sworn testimony regarding the redemption. In response, the Elfelts submitted a declaration of counsel, which stated that a representative of Equivest, which had acquired a tax deed on Palmer's farm for the 1991 taxes, told him that Equivest had sent Palmer a letter in June 1995. The letter allegedly advised Palmer that Equivest would commence proceedings to acquire his property unless he redeemed the property for the 1991 taxes.

The United States suggested that the parties stay the proceedings while the Elfelts deposed the Equivest representative. The deposition was taken on October 16, 2003, and the Equivest representative confirmed that Equivest had a policy to send such letters and that the letter to Palmer would have been sent shortly prior to the tender in 1995. Based on that deposition testimony, the United States withdrew its motion for summary judgment, since the new evidence suggested that Palmer might have actually asked the Treasurer's office to apply the tender to the 1991 taxes.

Ultimately the district court found that it had jurisdiction to hear the quiet title action and entered judgment in favor of the Elfelts.

While the second cross-motions for summary judgment were pending, the Elfelts filed a motion for Rule 11 sanctions against the United States and its attorney on the ground that it was improper for the United States to proceed with the case post-remand because there was no factual

support or legal basis for its position.[6]  After the judgment in their favor was entered, the Elfelts

applied for fees and other expenses under the EAJA, 28 U.S.C. § 2412.  The Elfelts also moved for

excess costs and sanctions against the United States' attorney under 28 U.S.C. § 1927 and the

court's inherent power to sanction.

After a hearing, the district court denied the Elfelts' application for fees and expenses under

the EAJA finding that the United States was substantially justified in advancing its positions both

pre- and post-remand.  The district court also denied the Elfelts' motion for Rule 11 sanctions

finding that the positions taken by the United States were supported by a reasonable view of the facts

after appropriate inquiry and were based on either existing law or a good faith argument made for

the extension, modification, or reversal of existing law.  Lastly, the district court denied the Elfelts'

motion for costs and sanctions under 28 U.S.C. § 1927 finding that the United States' attorney's

conduct did not fall within the scope of the prohibitions of the statute.  The Elfelts now appeal the

district court's order denying their post-judgment motions.

## II.  STANDARD OF REVIEW

A denial of an application for fees and other expenses under the EAJA is reviewed for an

abuse of discretion.  *Pierce v. Underwood*, 487 U.S. 552, 559-63 (1998).  This Court also reviews

a district court's decision on Rule 11 motions for an abuse of discretion.  *Runfola & Assoc., Inc. v.*

*Spectrum Reporting II, Inc.*, 88 F.3d 368, 372 (6th Cir. 1996).  The same standard is applied to the

district court's decision on sanctions under 28 U.S.C. § 1927 and the court's inherent power to

---

[6]The Elfelts originally filed two Rule 11 motions but subsequently withdrew the first motion, in which they contended that this Court had resolved all remaining issues in the case, including the issue raised on remand regarding the 1995 redemption.

sanction.  *Id*. at 375.

Under the abuse of discretion standard, an appellate court may overturn a lower court's ruling only if it finds that the ruling was arbitrary, unjustifiable or clearly unreasonable.  *Plain Dealer Publ'g Co. v. City of Lakewood*, 794 F.2d 1139, 1148 (6th Cir. 1986).  In practice, this standard requires the appellate court to uphold any district court determination that falls within a broad range of permissible conclusions.  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 400 (1990).

## III.  ANALYSIS

Before the Court for review are the Elfelts' application for fees and costs under the EAJA, motion for Rule 11 sanctions and motion for costs and sanctions under 28 U.S.C. § 1927 and the court's inherent power to sanction.  Because all requests for relief are based on either the United States' pre-remand position regarding the 1998 tender or its post-remand position regarding the 1995 tender, the Court will discuss the district court's decision on the motions in the same order after a review of the applicable standard for each motion.

## A.  Motion for Fees and Sanctions Standards

### 1.  The Equal Access to Justice Act

The EAJA requires the payment of fees and expenses to the prevailing party in an action against the United States, unless the position of the United States was substantially justified.  *Howard v. Barnhart*, 376 F.3d 551, 553 (6th Cir. 2004) (quoting *Scarborough v. Principi*, 541 U.S. 401, 405 (2004)); 28 U.S.C. § 2412(d)(1)(A) (2005).  A position is substantially justified when it is "justified in substance or in the main,"— that is, justified to a degree that could satisfy a

reasonable person. *Howard*, 376 F.3d at 553 (quoting *Pierce*, 487 U.S. at 565). In other words, a position is substantially justified when it has a reasonable basis in law or fact. *Id.* A court's finding that the government's position is unsupported by substantial evidence does not foreclose the possibility of the position being substantially justified. *Id.* (citing *Pierce*, 487 U.S. at 569). There is no presumption that the government's position is not substantially justified simply because the government loses its case. *See id.* (quoting *Scarborough*, 541 U.S. at 412). Nor is there such a presumption when the government withdraws its claims. *See E.W. Grobbel Sons, Inc. v. NLRB*, 176 F.3d 875, 878 (6th Cir. 1999). A position can be justified even though it is not correct. *Pierce*, 487 U.S. at 569.

### 2. Rule 11 of the Federal Rules of Civil Procedure

Under Rule 11 of the Federal Rules of Civil Procedure, the district court has discretion to award sanctions (1) when a party presents pleadings, motions or papers to the court for an improper purpose, (2) if the claims, defenses or other legal contentions therein are not warranted by existing law or a nonfrivolous extension of the law, or (3) if the allegations and other factual contentions therein do not have evidentiary support. Fed. R. Civ. P. 11; *see First Bank v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510 (6th Cir. 2002). The test for imposition of Rule 11 sanctions is whether the litigant's conduct was reasonable under the circumstances. *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 507 (6th Cir. 1998).

### 3. 28 U.S.C. § 1927 and the Court's Inherent Power to Sanction

Under 28 U.S.C. § 1927, any attorney who multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to personally satisfy the excess costs,

expenses and attorney's fees reasonably incurred because of such conduct. 28 U.S.C. § 1927 (2005). Sanctions may be awarded under § 1927 where an attorney knows, or reasonably should know, that a claim is frivolous. *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986).

In addition, a district court may award sanctions pursuant to its inherent power. Sanctions under a court's inherent power are even more limited and require a finding of bad faith. *First Bank*, 307 F.3d at 517.

## B. District Court's Decision on the United States' Pre-remand Summary Judgment Motion: the 1998 Tender

For the pre-remand portion of the litigation, the Elfelts filed an application for fees and other expenses under the EAJA and a motion for excess costs and sanctions under 28 U.S.C. § 1927 and the court's inherent power to sanction. The district court denied the Elfelts' application and motion finding that the United States' position on Palmer's 1998 tender was substantially justified. The Elfelts appeal on several grounds.

### 1. The Elfelts' Law of the Case Argument

The Elfelts first argue that in finding that the United States was substantially justified in advancing its position on Palmer's 1998 tender, the district court contradicted the law of the case, as this Court, on the first appeal, directed the district court to follow *Halabu*.

The Elfelts' argument is meritless. In finding that the United States' pre-remand position was not unreasonable, the district court was not reviewing the merits of the pre-remand arguments, which had already been rejected by this Court, but was only assessing the reasonableness of the United States' position at the time for the purpose of determining whether attorney's fees or

12

sanctions were warranted.

### 2. Substantial Justification of the United States' Position

The Elfelts also argue that the district court erred in determining that the United States' position was substantially justified because Judge Roberts' ruling in favor of the United States was reversed on appeal and, therefore, provides no basis for finding substantial justification. According to the Elfelts, the district court erroneously focused on the fact that Judge Roberts was persuaded by the United States' argument. Additionally, the Elfelts contend that the United States' position was not substantially justified because a reasonable person would not have challenged the authority of *Halabu* given this Court's ruling.

The Court is not persuaded by this argument for two reasons. First, as stated above, the United States' failure to win the suit raises no presumption that its position was not substantially justified.

Second, the United States relied on long-standing Michigan case law to support its position in an area where the law has not been settled by the Michigan Supreme Court. The district court found that the United States' interpretation of the Michigan statutory right-to-redemption scheme to be reasonable given the fact that there were two conflicting authorities decided by different panels of the Michigan Court of Appeals and that the Michigan Supreme Court had yet to rule on the issue. In its brief, the United States acknowledged the existence of *Halabu*, a later case decided by a different panel of judges from that of *Andre*, the case it was relying on. However, the United States contended that the underlying statutory right-to-redemption provision should be interpreted in accordance with the dissenting opinion in *Halabu*, which was consistent with *Andre*.

13

Before this Court determined that *Halabu*, rather than *Andre*, controls, the conflict between the two cases had not been resolved as the Michigan Supreme Court had not reached the question. Under these circumstances, the Court finds that it was not unreasonable for the United States to advance its position that the 1998 tender was effective redemption of the property under Michigan law. The facts that the United States' position persuaded the district court pre-remand and that a Michigan state judge had taken the same position also support the district court's finding that the United States' position was substantially justified.

Therefore, the Court finds that the district court did not abuse its discretion in finding that the United States' position was substantially justified and in denying the Elfelts' application for fees and costs under the EAJA. On the same basis, the Court also finds that the district court did not abuse its discretion in denying the Elfelts' motion for excess costs and sanctions under 28 U.S.C. § 1927 and the court's inherent power to sanction.

## C. District Court's Decision on the United States' Post-remand Summary Judgment Motion: the 1995 Tender

For the post-remand portion of the litigation, the Elfelts filed (1) an application for attorney's fees and expenses under the EAJA, (2) a motion for Rule 11 sanctions, and (3) a motion for excess costs and sanctions under 28 U.S.C. § 1927 and the court's inherent power to sanction. The district court denied all three motions.

The Elfelts appeal on the grounds that (1) it was a reversible error for the district court to contradict the law of the case as decided by this Court on the first appeal, (2) it was an error for the district court to find that it was reasonable for the United States to rely on Palmer as a credible

14

witness, (3) it was unreasonable for the United States to seek summary judgment given the fact that Palmer was not reliable, and (4) it was also an error for the district court not to address whether the United States' novel theory of combining the funds paid for redemption of different tax years was substantially justified.

After a review of the records, the Court finds that the district court did not abuse its discretion in denying the Elfelts' application and motions.

### 1. The Elfelts' Law of the Case Argument

The Elfelts argue that the United States had already presented to the district court pre-remand and to this Court its argument that Palmer made a good faith effort to redeem the 1990 taxes in 1995 but was prevented from doing so by the County Treasurer. The Elfelts further argue that this Court rejected the argument by stating, "Although Mr. Palmer apparently sought at one point to satisfy his delinquency on the 1990 taxes, the county treasurer applied the payment to 1991 taxes instead." *See Elfelt*, 47 Fed. Appx. at 388. Therefore, the Elfelts argue, the trial court was not allowed to consider this argument on remand.

This argument is meritless. On the Elfelts' first appeal, this Court simply reversed the district court's order granting summary judgment for the United States on the issue of the 1998 tender and remanded the case for further proceedings. Clearly the law of the case did not bar the district court from allowing the United States to pursue its argument on the 1995 tender.

### 2. Reasonableness of the United States' Reliance on Palmer

Next, the Elfelts argue that the district court erred in finding that it was reasonable for the United States to advance its position solely relying on Palmer's testimony because his testimony was

15

inconsistent throughout the litigation.

The district court found that "the United States had a position to enforce in an effort to collect taxes to fund the public treasury and to have facts upon which it could rely." (Hr'g Tr. on Mot. for Fees, Costs and Sanctions of 4/27/04, J.A. at 831.) Therefore, the court found that it was not unreasonable for the United States to put Palmer forth as a witness whose credibility should be assessed by the fact finder in the case. The district court also gave the United States credit for withdrawing its position when further discovery indicated that Palmer's credibility was seriously undermined.

As the Elfelts point out, it is true that Palmer's testimony has not been consistent: In his affidavit, he testified that he asked the Treasurer's office to pay for the 1990 taxes; in a hearing before the district court a year later, he testified that he asked to pay for the 1989 taxes; and in the deposition taken nearly three years after the hearing, he stated again that he wanted to redeem the 1989 taxes. Despite the discrepancies, however, Palmer had consistently testified that he wished to redeem the oldest delinquent taxes and not the 1991 taxes because he believed he had to pay the taxes in order and that he was confused about the process.

The Elfelts also argue that the United States was unreasonable in advancing its position despite the County Treasurer's testimony that the office policy was to apply the tax to the oldest taxes due absent a specific request from the taxpayer and its knowledge of the fact that Equivest had sent a letter to Palmer advising him to redeem the 1991 taxes. The United States responds that it is true that the Elfelts had previously referred to the fact that Equivest purchased the 1991 tax deed and that there were some references to a letter that Palmer took with him in 1995 when he went to

16

redeem his taxes. However, the United States argues, those facts in and of themselves did not undercut Palmer's testimony that he had intended to tender payment for 1989 or 1990.

The Court finds that the district court did not abuse its discretion when it found that the United States was not unreasonable in putting Palmer forth as a witness and relying on him given its reasoning acknowledging the United States' duty to collect taxes to fund the public treasury.

**3. Reasonableness of the United States' Second Motion for Summary Judgment**

The Elfelts also argue that it was unreasonable for the United States to seek summary judgment when there was a genuine issue of material fact with respect to Palmer's attempt to redeem his property in 1995. The Elfelts contend that because a reasonable person would not advance its position in a summary judgment motion when there are a number of disputed material facts, the United States was not substantially justified in so doing.

However, this argument overlooks the fact that the United States did not seek summary judgment post-remand on the ground that Palmer's tender in 1995, by itself, established effective redemption. In its summary judgment motion, the United States argued that Palmer's two payments made by the close of the redemption period in May 1997 collectively constituted a valid redemption under Michigan law for both the 1989 and 1990 tax deeds.[7] Since the factual dispute on the 1995 tender was about whether Palmer asked to redeem his taxes for 1989 or 1990 and it was undisputed that Palmer made two payments before the close of the redemption period, the United States' ground for summary judgment did not involve a genuine issue of material fact. Therefore, the Court finds

---

[7]Palmer made a payment of $1,573.13 on August 8, 1995 and a payment of $1,751.04 on December 30, 1996. Both payments were made before the close of the redemption period in May 1997.

that the United States' motion for summary judgment was not unreasonable. This leaves the Court

with the issue of whether the United States was substantially justified in advancing the theory that

Palmer's payments collectively constituted an effective redemption.

### 4. The United States' Theory of Combining Tax Payments

The Elfelts argue that the United States' position in its post-remand summary judgment

motion was an argument fabricated by the United States which had no basis in law. The United

States responds that its theory is not a novel fabrication. The United States points out that there is

no requirement that a tax deed be redeemed in a single payment and nothing prohibited Palmer from

paying off the tax deeds as he was able to marshal the necessary funds. The United States also

argues that since Michigan courts liberally construe the redemption statutes in favor of persons

seeking to redeem property, there was no reason to conclude that the courts would read the statutory

scheme to prevent a finding that Palmer had tendered payment for both 1989 and 1990 with his two

payments collectively. *See Geraldine v. Miller*, 33 N.W.2d 672, 677 (Mich. 1948) (holding that

Michigan public policy favors the redemption of property sold for taxes).

The Court finds that it was reasonable for the United States to pursue this theory given that

Michigan courts liberally construe the redemption statutes in favor of the taxpayers but have never

addressed the precise theory advanced by the United States. The Court, therefore, finds that the

United States was substantially justified in seeking summary judgment on such theory.

The Elfelts raised this argument at the hearing before the district court, but the court did not

address this argument in its ruling. The Elfelts argue that the district court's failure to address this

argument constituted a reversible error. However, because the argument would have failed on the

merits, the Court finds that the district court's error was harmless.

For the reasons stated above, the Court finds that the district court did not abuse its discretion in denying the Elfelts' application for fees and expenses under the EAJA for the post-remand portion of the case. Because Rule 11 sanctions and motion for excess costs and sanctions under 28 U.S.C. § 1927 or the court's inherent power to sanction require either a standard of reasonableness or a higher standard, the Court also finds that the district court did not abuse its discretion in denying the Elfelts' motion for Rule 11 sanctions and motion for excess costs and sanctions.

## IV. CONCLUSION

For the foregoing reasons, the district court's denial of plaintiffs-appellants' application for fees and costs under the EAJA, motion for Rule 11 sanctions and motion for excess costs and sanctions is **AFFIRMED** in the entirety.