McVANNEL *v.* PURE OIL CO.

1. TAXATION—TAX DEED—COMPLIANCE WITH STATUTE.

In suit by owners of land under regular chain of title to set aside tax deed from State, it is incumbent on holders under said deed to show compliance with tax law in force at that time.

2. DESCENT AND DISTRIBUTION—TITLE TO LAND DESCENDS. TO HEIRS.

At death of ancestor, title to real estate descends to heirs, in absence of other disposition thereof.

3. TAXATION—TAX DEED—NOTICE OF REDEMPTION TO BE SERVED ON HEIRS OF DECEASED OWNER—STATUTES.

Under Act No. 204, Pub. Acts 1899, purchasers under State tax deed were required, in case of death of owner, to serve notice of redemption, provided for in said statute, upon personal representative of deceased and upon his heirs.

4. SAME—STATUTORY PROCEEDINGS MUST BE STRICTLY FOLLOWED.

Effect of proceedings under tax law, if valid, is to divest true owner of title to his property, and to vest same in holder of tax deed, and such proceedings must be closely scrutinized and strictly construed.

5. SAME—TAX DEED—FAILURE TO SERVE NOTICE ON HEIRS.

Purchasers under State tax deed, who failed to serve notice of redemption upon heirs of deceased owner, not only cannot claim title under said tax deed, but are barred from asserting such title or claiming lien based thereon (1 Comp. Laws 1929, § 3466).

6. SAME—ADVERSE POSSESSION—BURDEN OF PROOF.

Purchasers under State tax deed, who failed to comply with provisions of tax law, and who claim title by adverse possession, must establish such title independent of and contrary to provisions of said law (1 Comp. Laws 1929, § 3466).

7. ADVERSE POSSESSION—COLOR OF TITLE.

Under law of this State, color of title is not necessarily basis of adverse possession, but one may claim and acquire title by adverse possession independent of color of title.

8. ESTOPPEL—TITLE TO LAND.
   Title to land may not, under law of this State, rest on estoppel.

9. ADVERSE POSSESSION—UNOCCUPIED LAND—OCCASIONAL ENTRY.
   Occasional or periodical entry upon unoccupied land does not
   constitute such actual possession as will ripen into title by
   adverse possession, but there must be such continuity of pos-
   session as will furnish cause of action for every day during
   whole period required to perfect title by adverse possession.

10. SAME—PAYMENT OF TAXES.
   Evidence showing that grantees entered upon premises under
   void tax deed, that they cut brush, built shack, lived on prem-
   ises for some time, left for several years, during which time
   shack disappeared, and that thereafter, for remainder of stat-
   utory period, when they visited premises for short time each
   year, they never lived in any house thereon, *held*, insufficient
   to establish title by adverse possession, although they paid
   taxes for whole of said time.

11. ESTOPPEL—TAXATION—TAX DEED—FAILURE TO PAY TAXES.
   Owners of unoccupied land under regular chain of title are not
   estopped from asserting title as against purchasers under void
   tax deed, although they paid no taxes and made no move to
   assert title for more than 15 years.

12. TAXATION—SETTING ASIDE TAX DEED—PAYMENT OF TAXES—
    EQUITY—CONDITIONAL DECREE.
   Owners of unoccupied land under regular chain of title, who
   made no claim thereto and paid no taxes for more than 15
   years, were properly required, as reasonable condition to set-
   ting aside void tax deed and recovery of possession from
   grantees thereunder, to pay latter taxes paid, although provi-
   sion of statute requiring owners to pay value of improvements
   is not applicable (3 Comp. Laws 1929, §§ 14946–14949).

Appeal from Midland; Warner (Glenn E.), J.,
presiding. Submitted January 10, 1933. (Docket
No. 75, Calendar No. 36,857.) Decided April 4, 1933.

Bill by George H. McVannel and others against
Pure Oil Company, an Ohio corporation, and others
to set aside a deed and oil lease. Conditional decree
for plaintiffs. Both parties appeal. Affirmed.

*Wilson & Hoffman* and *O'Keefe & O'Keefe,* for plaintiffs.

*Virgil W. McClintic,* for defendant Pure Oil Company.

*Chester E. Morris,* for defendants Harter.

Potter, J.   Plaintiffs filed their bill of complaint against defendants to set aside a deed from F. Roy Holmes and Cora A. Holmes, his wife, to Basil Harter and Ralph Harter, and an oil lease from Basil E. Harter and Hazel Harter his wife, and Ralph D. Harter to the Pure Oil Company; for a release of the interest of the Pure Oil Company of its claimed interest in the lands in question under its lease; to cancel and set aside its lease, and for other relief.   Defendants answered, denying all the material allegations of plaintiffs' bill, alleging title, and rights in the Pure Oil Company under its lease, claimed to be valid; denying plaintiffs were entitled to the whole or any part of the relief prayed.   From a conditional decree for plaintiffs, defendants appeal, and plaintiffs take a cross-appeal.

The controversy concerns the northeast quarter of the southwest quarter of section 6, township 14 north, range 2 west, in Midland county.   Plaintiffs claim they are the owners of the regular or government chain of title to the real estate in question; defendants did not prove title by adverse possession, nor by virtue of State tax deeds passing under the sale of the lands for taxes and proceedings thereunder; and plaintiffs are not estopped to claim under the original government chain of title.   The trial court imposed, as a condition to a decree for plaintiffs, they should repay the amount of the taxes on the premises paid by the adverse claimants, and decree was rendered for plaintiffs subject to this

condition. Defendants claim plaintiffs' right of action was barred by the statute of limitations (3 Comp. Laws 1929, § 13964), that they have title to the premises by adverse possession, and plaintiffs are estopped from asserting title against defendants.

Mahlon S. Miller, being the owner of this land, died August 11, 1902, leaving by his first wife five children, Celesta Miller Bailey, Elizabeth Miller Smith, Mary Miller Garner, Lemuel Miller, and Sylvester Miller; and by his second wife two children, Earl Miller and Myrtle Miller Kath. Some of these children died prior to the commencement of this suit. There is no dispute as to the heirship of their descendants. Plaintiffs claim title because they hold in privity with the title of Mahlon S. Miller, deceased. Defendants base their title on a tax deed from the State to F. Roy Holmes, dated October 19, 1907, recorded December 2, 1907, made in pursuance of the general tax law of 1897, as amended. Holmes deeded the property to Basil Harter and Ralph Harter May 9, 1914, which deed was recorded June 5, 1914. The rights of defendants being based upon this tax deed, it was incumbent upon them to show compliance with the tax law.

Defendants proved service of the tax notice prescribed by statute upon Mary Garner, Lemuel Miller, Elizabeth Miller Smith, Sylvester Miller, Earl Miller, and Joseph Evaland, as guardian of Myrtle Miller, and service by registered letter upon Robert S. Mitchell, mortgagee. No proof that service was made upon Celesta M. Bailey or upon her personal representative or heirs appears.

(1) Act No. 229, Pub. Acts 1897 (see 1 Comp. Laws 1929, § 3535), prohibited the issuance of writs of assistance or other process to purchasers under tax deed of land to place them in possession thereof until six months after the return of service of the

tax deed notice provided therein. If the owner of the original title after such service redeemed therefrom, he became entitled to a reconveyance in pursuance of the statute. This act was amended by Act No. 204, Pub. Acts 1899, to provide, in case the owner of the interest in the land was dead, for service upon the personal representative of the deceased person and upon his heirs. At the death of the ancestor, the title to real estate descends to heirs, in the absence of other disposition of the real estate, and service must have been made upon the heirs of Celesta Miller Bailey. The effect of proceedings under the tax law, if valid, is to divest the true owner of the title to his property, and to vest the same in the holder of the tax deed, and such proceedings must be closely scrutinized and strictly construed. The rule is well settled in this State that:

"The tax title holder cannot proceed by 'piecemeal' to cut off the right of redemption of each part owner. Until he has complied with the statute as to all, the right of redemption remains to all. It seems to me that this is the reasonable construction that is given to these statutes." *White* v. *Shaw*, 150 Mich. 270, 273.

Until this is done, the statute provides:

"The person or persons, claiming title under tax deed or certificate of purchase shall be forever barred from asserting such title or claiming a lien on the land by reason of such tax purchase." 1 Comp. Laws 1929, § 3466.

Defendants not only cannot claim title under the tax deed involved, but are barred from asserting such title or claiming a lien based thereon.

(2) Defendants claim title by adverse possession. If they establish title by adverse possession, such

title must be established independent of and contrary to the provisions of 1 Comp. Laws 1929, § 3466. Under the law of this State, color of title is not necessarily the basis of adverse possession. One may claim and acquire title by adverse possession independent of color of title. *Lawson* v. *Bishop,* 212 Mich. 691.

"The doctrine which sanctions the divestiture of the true owner by hostile occupancy is to be taken strictly, and the case is not to be made out by inference, but by clear and cogent proof." *Yelverton* v. *Steele,* 40 Mich. 538, cited in *Simons* v. *McCormick,* 202 Mich. 485.

"Adverse possession, to give title, must be an actual, continued, visible, notorious, distinct, and hostile possession, and a finding of adverse possession must set forth in explicit terms a state of facts that will satisfy the legal definition." *Paldi* v. *Paldi,* 95 Mich. 410, cited in *Simons* v. *McCormick, supra.*

"It is also well settled that the possession of an occupant is co-extensive with his claim and color of title. If in possession of a part under color of title to the whole tract, his constructive possession extends to the whole; if under color of title to an undivided interest, his constructive possession covers the whole to the extent of such interest; if without color of title, the possession is not extended by construction, beyond the boundaries of the occupied portion." *Campau* v. *Campau,* 44 Mich. 31.

"One claiming title by adverse possession but not holding under color of title acquires no title to any land except what is in his actual possession. There can be no constructive possession without color of title. It cannot be acquired by mere assertion of claim of title." 2 C. J. pp. 230, 231.

"The reason on which the rule is based is that when an entry is not under color of title there is no invasion or disseizin which notifies the true owner of a claim asserted by another person, or which gives him a right of action except as to the land actually occupied." 2 C. J. p. 232.

Mere occupancy of land is not sufficient to give title by adverse possession. *Bunce* v. *Bidwell,* 43 Mich. 542.

"A mere claim of title, no matter how long asserted, will not ripen into title." *Doctor* v. *Turner,* 251 Mich. 175.

"It is well settled that the constructive possession of land is in the holder of the record title." *Doctor* v. *Turner, supra.*

See, also, 3 Comp. Laws 1929, § 13967.

."It may well be conceded that paying taxes, or asserting title, or the common understanding in the neighborhood, or making surveys, or an occasional renting for trapping and shooting, is not sufficient to establish title by adverse possession." *Whitaker* v. *Erie Shooting Club,* 102 Mich. 454.

The Harters received deed to the property in 1914. The next year they entered upon the premises, cut some brush, and built a lean-to shack. They left the premises in the fall of 1915, and did not come back again until the summer of 1922. At that time the house was gone, and while they stayed there a short time they lived in a movable house built on a motor truck. They went back again on the premises, it is claimed, each year until 1928. The Harters lived in Galion, Ohio, and never lived upon the land in question in any house thereon at any time except in 1915.

The case is analogous to *Yelverton* v. *Hilliard,* 38 Mich. 355, where the land in controversy was uninclosed wood land, and the claimed owner gave per-

mission to another to enter upon and clear off and cultivate such portions of it as he chose, subject to the agreement that in case of sale the claimed owner would pay for the improvements, less the value of the use of the land; in pursuance of such agreement the timber on about one acre of the land was cut off and cleared and inclosed in a fence, plowed, planted to "bagas" which were harvested and removed in October or November following. No other use of the land was made until the conveyance to defendant January 4, 1866. It was said:

"The premises were vacant from the time Turner took off his little crop of turnips in October or November, 1865, to the entry of defendant in the succeeding January, and during this period there seems to have been no adverse possession and no obstacle to an entry by the plaintiff.

"The finding therefore not only fails to show 10 years' possession under the tax deeds next preceding the commencement of the action, but on the contrary shows affirmatively that the possession was for a shorter period."

The question of adverse possession of unoccupied land was considered in *Doctor* v. *Turner, supra,* from which the following may be deduced:

a.  Constructive possession of land is in the holder of a record title;

b.  A mere claim of title, no matter how long asserted, will not ripen into title;

c.  Occasional or periodical entry upon land does not constitute actual possession;

d.  In order to make good a claim of title by adverse holding, the true owner must have actual knowledge of the hostile claim; or,

e.  The possession must be so open, visible, and notorious as to raise the presumption of notice to the world that the right of the true owner is invaded

intentionally, and with the purpose to assert a claim of title adversely to his, so that if the true owner remains in ignorance it is his own fault;

f.  There must be such continuity of possession as will furnish a cause of action for every day during the whole period required to perfect title by adverse possession;

g.  The possession must be more than a possession which will enable a person on the ground of a possessory title to maintain trespass or ejectment against a stranger;

h.  Occasional trespasses or acts of ownership do not constitute such continuous possession as will ripen into title by adverse possession, though extending over the statutory period;

i.  Casual hay cutting, amounting to a little more than an annual trespass, is not sufficient to warn the owner of the record title of a claim of adverse possession.

Defendants failed to make out a case of title by adverse possession, and the trial court came to a correct conclusion in so finding.

(3)  Defendants claim plaintiffs are estopped from asserting title to the premises in question.

"No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by some person thereunto by him lawfully authorized by writing."  3 Comp. Laws 1929, § 13411.

The title to land may not, under the law of this State, rest on estoppel.

"As our own cases settle this question, it is unnecessary to discuss at length cases from other States. There is a want of harmony upon the subject; but it is confidently believed that the doctrine contended for exists only where the courts have permitted the doctrine of estoppel to override the statute of frauds." *Nowlin Lumber Co.* v. *Wilson,* 119 Mich. 406.

"Unfortunately for defendant's contention, the statute of frauds prevents the passing of title to realty by parol, and this cannot be done any more under the guise of an estoppel, in the absence of fraud, and when the estoppel consists only of an implied assent, than by showing a direct parol contract." *Huyck* v. *Bailey,* 100 Mich. 223.

"It has been repeatedly held that interests in land cannot rest on estoppel alone. The statute of frauds forbids." *Wilson* v. *Railroad Co.,* 132 Mich. 469.

We are satisfied defendant has not made out a title to the premises in question either under its tax deed or by adverse possession, and plaintiffs are not estopped from asserting title to the premises.

(4) The decree of the trial court gave the lands to the plaintiffs on condition they pay defendants Basil Harter and Ralph Harter the sum of $564.13, taxes paid on the property, within 60 days from the date of the decree, and if such sum was not paid, the premises might be sold to satisfy that claim, which was made a lien upon the premises. From this part of the decree plaintiffs appeal. The court found the Harters had paid the taxes. They went into possession under a deed from Holmes. Holmes never acquired any title, and had none to convey to them.

"A party, therefore, who enters upon the possession of land under one, or a series of tax titles, should see to it that he has such a title as will war-

rant him in incurring the liabilities incident to that possession. In imposing this rule, the law only applies in his case the obligation, which is incumbent upon every other purchaser of land, to take care that he has a good title if he would derive benefit from it, or enjoyment under it." *Lacey* v. *Davis,* 4 Mich. 140 (66 Am. Dec. 524).

One in possession of land, claiming title, is bound to pay the taxes upon it. *Dubois* v. *Campau,* 24 Mich. 360, 368.

The ejectment statute provides, where defendant or defendants, or persons through whom he or they claim title, shall have been in the actual peaceable occupation of the premises recovered for six years before the commencement of the action or the same shall have been so occupied for a less time than six years under color of title and in good faith, the defendant shall be allowed compensation for the buildings and improvements on the premises placed thereon by them, though the plaintiff may recover, and, upon judgment being entered, the plaintiff may elect to abandon the premises to the defendant or pay for the value of the improvements found. 3 Comp. Laws 1929, §§ 14946–14949. These statutes are not applicable to cases like that here involved, though they may have influenced the trial court, whose decree seems to be based upon the rule that it might grant relief upon reasonable conditions. We are not, under the circumstances, disposed to modify that decree, which is affirmed, with costs.

McDonald, C. J., and Clark, Sharpe, North, Fead, and Butzel, JJ., concurred with Potter, J. Wiest, J., concurred in the result.