*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN B. MACMILLAN,

      Plaintiff/Counterdefendant-Appellant,

UNPUBLISHED
November 19, 2020

v

No. 348872
Oakland Circuit Court
LC No. 2015-150518-CH

GREG HAASE and SHERYL HAASE,

      Defendants/Counterplaintiffs-
      Appellees.

Before: O'BRIEN, P.J., and BECKERING and CAMERON, JJ.

PER CURIAM.

This boundary dispute is before the Court for the second time. In a prior appeal, plaintiff, John B. MacMillan, challenged the trial court's order granting summary disposition in favor of former defendant S & G Holdings, LLC (S & G), with respect to plaintiff's claims of adverse possession, acquiescence, and trespass. *MacMillan v S & G Holdings, LLC*, unpublished per curiam opinion of the Court of Appeals, issued June 26, 2018 (Docket No. 337304). This Court reversed the trial court's order and remanded the case for trial on the parties' competing claims of title. On remand, defendants Greg Haase and Sheryl Haase were substituted as defendants in place of S & G.[1] Following a bench trial, the trial court again dismissed plaintiff's claims and quieted title to the disputed property in favor of defendants, the record titleholders.

Plaintiff appeals as of right, arguing that the trial court erred by dismissing his adverse possession and acquiescence claims because he presented unrebutted evidence in support of those claims. He also argues that the trial court's decision violated the law-of-the-case doctrine because it was inconsistent with the directives issued by this Court in Docket No. 337304. We agree that the trial court erred by finding there was no deck extending from the northern side of plaintiff's house before 2005. Because it is unclear whether the trial court would have otherwise determined that plaintiff established adverse possession of the property below his originally existing deck but

---

[1] Shortly before this Court issued its opinion in Docket No. 337304, S & G conveyed its interest in the subject property to defendants.

for its mistaken finding as to when the original deck was first built, we reverse the portion of the trial court's order concerning the erroneous finding, as well as its conclusion that plaintiff had not established adverse possession, and remand for further findings regarding plaintiff's adverse possession claim. In all other respects, we affirm the trial court's opinion, order, and judgment.

## I. BACKGROUND

Plaintiff owns 548 Fernhurst in Orion Township. The property immediately to the north—552 Fernhurst—was purchased by former defendant S & G in October 2012. A general overview of the parties' dispute was set forth in this Court's opinion regarding plaintiff's first appeal:

Plaintiff has owned his house on the lake since 1994. Adjacent to plaintiff's property on the north side of his parcel is [S & G's] property, with the boundary line between the respective sides of the houses and lots being the subject of the dispute. Lake Orion is located to the east of both properties and the roadway accessing the properties lies to the west. S & G is a limited liability company that was formed in 2011 by Gregory and Sheryl Haase, husband and wife, for purposes of operating a property rental business, and [S & G] purchased the lake house in October 2012, inheriting a tenant from the seller who had also utilized the property as a rental unit. The tenant later died, and the Haases developed a plan to raze the home and build a new house on the site, where they would reside after construction was completed. In 2014, the Haases obtained a boundary and topographic survey prepared by Kieft Engineering, Inc. The survey showed partial encroachments on [S & G's] property—a deck and attached ramp connected to the north side of plaintiff's house, which crossed the surveyed boundary line. This discovery set off a dispute between the Haases and plaintiff concerning the true boundary line, eventually leading to the litigation.

Plaintiff's claim of adverse possession was predicated on the alleged existence of the encroaching structures for the requisite statutory period,[2] as well as his maintenance of the disputed strip of land, from the road down to the lake, by way of planting flowers, weeding, fertilizing, watering, tree trimming, and general landscaping activities. Plaintiff's claim of acquiescence was based on various landmarks and structures in the disputed area that allegedly had been treated as forming the boundary line between the parcels, i.e., railroad ties[, also referred to as landscape timber,] near the street, a rising stone retaining wall, beyond the northern edges of the deck and ramp, past the back of the shed, and then to the lake to a board at the seawall. The line that plaintiff claims has been treated as the boundary between the lots is several feet north of the boundary line identified in the 2014 Kieft survey. There was no dispute that the surveyed line favored [S & G's] position regarding the exact location of the boundary between the properties, which is why plaintiff was forced to rely on the doctrines of adverse possession and acquiescence to claim title.

* * *

As indicated, plaintiff filed suit, alleging the claims of adverse possession, acquiescence, and trespass, with the trespass count being premised on a boundary created by application of adverse possession and acquiescence principles, along with the Haases' placement of stakes and removal of trees and plant life on plaintiff's side of that boundary. [S & G] answered and filed a counterclaim, asserting allegations sounding in trespass, nuisance per se, nuisance in fact, and quiet title. In support of the trespass counterclaim, [S & G] cited the encroachments reflected in its 2014 survey. And [S & G] alleged that a survey completed at plaintiff's direction in April 2005 did not show any encroachments, "evidencing that the encroachments did not occur until after April 2005," which allegation was plainly an attempt by [S & G] to undermine the adverse possession and acquiescence claims in light of plaintiff's need to establish a 15-year period to support those claims.

---

[2] In addition to the deck and ramp, plaintiff argued that a shed located down by the lake also partially encroached on [S & G's] property and that the shed was there when plaintiff moved into his home in 1994, thereby lending further support for his claim of adverse possession.

---

[*MacMillan*, unpub op at 1-3 (some footnotes omitted)]

At the bench trial on remand, the trial court heard testimony from plaintiff; plaintiff's friend Craig Kempenaar; Christopher Enright, an architect who prepared construction drawings for a proposed remodeling of plaintiff's house in 2005; Floyd Provo, a long-term resident of Fernhurst Court; and defendants. The parties' exhibits included photographs of the disputed area between their properties, the drawings prepared by Enright in 2005, a survey of plaintiff's property prepared by Richmond Engineering in 2005, and the 2014 Kieft Engineering survey that triggered the parties' dispute. The trial court found plaintiff's proofs unpersuasive and therefore dismissed plaintiff's claims, quieted title to 552 Fernhurst in favor of defendants, and ordered plaintiff to remove any structures that encroached on defendants' property. This appeal followed.

II. STANDARDS OF REVIEW

A trial court's conclusions of law following a bench trial are reviewed de novo, while its findings of fact are reviewed for clear error. *Chelsea Investment Group LLC v City of Chelsea*, 288 Mich App 239, 250; 792 NW2d 781 (2010). "A finding is clearly erroneous if there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made." *Id*. at 251. In reviewing factual findings, this Court must "give deference to the trial court's superior ability to judge the credibility of the witnesses who appeared before it." *Glen Lake-Crystal River Watershed Riparians v Glen Lake Ass'n*, 264 Mich App 523, 531; 695 NW2d 508 (2004) (quotation marks and citation omitted). Whether the law-of-the-case doctrine applies is a question of law that is reviewed de novo on appeal. *Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001).

-3-

## III. ADVERSE POSSESSION

Plaintiff first argues that the trial court made several erroneous findings of fact and, consequently, erred by concluding that he had not established his claim of adverse possession. We agree, in part, and disagree, in part.

As this Court explained in Docket No. 337304, the general principles of adverse possession have been succinctly described in the past as follows:

> A claim of adverse possession requires clear and cogent proof that possession has been actual, visible, open, notorious, exclusive, continuous, and uninterrupted for the statutory period of fifteen years. These are not arbitrary requirements, but the logical consequence of someone claiming by adverse possession having the burden of proving that the statute of limitations has expired. To claim by adverse possession, one must show that the property owner of record has had a cause of action for recovery of the land for more than the statutory period. A cause of action does not accrue until the property owner of record has been disseised of the land. Disseisin occurs when the true owner is deprived of possession or displaced by someone exercising the powers and privileges of ownership. [*MacMillan*, unpub op at 7-8,[2] quoting *Kipka v Fountain*, 198 Mich App 435, 439; 499 NW2d 363 (1993).]

In addition,

> Other cases . . . indicate that the possession must be hostile and under cover of a claim of right. *McQueen v Black*, 168 Mich App 641, 643; 425 NW2d 203 (1988), quoting *Connelly v Buckingham*, 136 Mich App 462, 467-468; 357 NW2d 70 (1984). "The term 'hostile' as employed in the law of adverse possession is a term of art and does not imply ill will"; rather, hostile use is that which is "inconsistent with the right of the owner, without permission asked or given," and which use "would entitle the owner to a cause of action against the intruder." *Mumrow v Riddle*, 67 Mich App 693, 698; 242 NW2d 489 (1976). [*MacMillan*, unpub op at 8, quoting *Wengel v Wengel*, 270 Mich App 86, 92-93; 714 NW2d 371 (2006).]

The trial court's opinion after the bench trial contains only brief findings of fact and conclusions of law. The court's findings focus primarily on the location of plaintiff's shed and when plaintiff's deck and ramp may have been built. With respect to adverse possession, the trial court's legal conclusion states only that plaintiff did not establish the requisite elements of adverse possession, with no further analysis. Perhaps because of the trial court's failure to analyze the individual elements of plaintiff's adverse possession claim, plaintiff devotes the majority of his

---

[2] Unpublished opinions are not binding precedent. *Wilmington Savings Fund Society, FSB v Clare*, 323 Mich App 678, 687; 919 NW2d 420 (2018), citing MCR 7.215(C)(1) and *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010). We cite *MacMillan* in the interest of consistency among the opinions stemming from the same lower court case.

argument to challenging various theories presented by defendants at trial and factual findings reached by the trial court. To the extent that plaintiff challenges arguments made by defendants that were not adopted by the trial court, he cannot establish that those issues affected the trial court's decision. We will therefore focus on plaintiff's claims of erroneous findings by the trial court.

Plaintiff contends that the trial court erred by finding that his shed did not encroach on defendants' property for the statutory period. Plaintiff relies on Provo's testimony about helping Scott Johansson, the former owner of 548 Fernhurst, construct the shed sometime between 1988 and 1994, coupled with the trial court's determination that Provo was a highly credible witness. Plaintiff's position is unpersuasive. Although Provo recalled the shed having been built before plaintiff acquired 548 Fernhurst in 1994, he did not know whether the shed was fully situated on the 548 Fernhurst property. Thus, Provo's testimony was only evidence that the shed had been in place for many years. It had no bearing on whether any portion of the shed was situated on defendants' property.

The trial court's finding regarding plaintiff's shed was not clearly erroneous. It appears that the trial court relied on three exhibits in support of its conclusion—the 2014 Kieft survey, a site plan prepared by Enright in 2005, and the Richmond survey dated June 1, 2005. Each of these drawings depicts plaintiffs' shed abutting, but not crossing, the boundary line between the subject properties. In fact, *all* of the surveys and drawings on which the shed appears place it fully within plaintiff's property. The trial court did not clearly err by finding that the shed, itself, was not an encroachment that could support plaintiff's adverse possession claim.[3]

Plaintiff also takes issue with the trial court's finding that his deck and ramp did not exist for the requisite 15-year period. Specifically, plaintiff challenges the trial court's determination that "the earliest that the deck and ramp crossed into the disputed area was 2007/2008, which is less than the statutory period," and that "the documentary evidence establishes that the deck/ramp did not exist in 2005." Plaintiff's argument misses the mark, as the above-quoted statement was made in the trial court's order granting S & G's motion for summary disposition, rather than its findings following the bench trial. Nonetheless, the trial court made a similar finding after trial regarding the nonexistence of the deck and ramp in 2005. We conclude that plaintiff's argument has merit as it relates to the deck, but not the ramp.

The trial court stated several times throughout its opinion and order that there was no deck or ramp extending from plaintiff's house in 2005. It relied generally on testimony from Provo and Enright, as well Enright's 2005 site plan, the 2005 Richmond survey, and aerial photographs of

---

[3] The only evidence to the contrary was Greg's testimony concerning the shed's soffit, which he claimed extended approximately 18 to 24 inches beyond the boundary line. While the trial court did not discuss this evidence in its findings, it excluded the overhanging portion of the shed's roof from its order directing plaintiff to remove all encroachments from defendants' property. We infer that the trial court accepted Greg's assertion that the soffit encroached on defendants' property, at least to some extent. That said, plaintiff presents no argument on appeal regarding the trial court's treatment of the shed soffit.

the area from 2002, 2005, and 2006.  The evidence cited by the trial court did not support its finding regarding the deck.  Provo recalled a small platform protruding from the second level of plaintiff's home while it was still owned by the Johanssons.  Although Provo was hesitant to characterize it as a "deck," considering its small size, he had no doubt that there was a platform on which a person a could stand.  Considering the trial court's assessment of Provo as a disinterested and credible witness, the court's determination that *no* deck existed until sometime after 2005 is highly suspect.

Turning to the documentary evidence on which the trial court relied, it is true that neither the Richmond survey nor the Enright site plan admitted as Defendants' Exhibit H, both of which were prepared in 2005, include the deck in their depictions of plaintiff's property.  But the trial court's belief that these documents proved the deck did not exist at that time flatly ignores the remainder of Enright's drawings and his testimony.

Several of Enright's drawings were admitted as exhibits: a demolition plan, two versions of upper-level architectural plans, an upper-level electrical plan, two site plans, an exterior elevation drawing, and a copy of the Richmond survey that was marked up by Enright.  Of these exhibits, only two—the site plan admitted as Defendants' Exhibit H and the marked-up survey admitted as Plaintiff's Exhibit 28—omitted the deck in their visual depiction of plaintiff's property.[4]  Exhibit H was submitted to Orion Township when plaintiff sought a variance for his remodeling project; it appears to be a cover page of sorts, as it includes an index referring to other drawings, including the upper-level plan designated by Enright as drawing "A 103," which *does* include the deck.[5]  Further, while Enright had no independent memory of whether there was a deck on the north side of plaintiff's home, he opined that it existed in 2005 in light of its inclusion in the architectural drawings.

As already noted, the June 1, 2005 survey from Richmond lacks any reference to the deck on the north side of plaintiff's home.  But according to Enright, it is not uncommon for a survey to include only those structures that exist at ground level.  Thus, to the extent that the deck was a cantilevered element without ground-level support—as Provo recalled and as depicted in Enright's exterior elevation drawing (the only drawing to show the vertical aspects of plaintiff's home)—the absence of the deck from the survey did not necessarily prove that it did not exist when the survey was prepared in 2005.  The trial court found Enright credible, but did not address the conflicts between its own findings and Enright's testimony.

The trial court also cited several of the aerial photographs introduced by the parties to support its determination that the deck did not exist in 2005 or even 2006.  The 2002 aerial photograph is a grainy, black-and-white image.  It is difficult to clearly discern plaintiff's home at

---

[4] The trial court lists Exhibit H under "Relevant Trial Exhibits," but is silent with regard to the other Enright exhibits and Enright's trial testimony opining that the deck existed and encroached on defendants' property in 2005.

[5] Exhibit 28 was a copy of the Richmond survey on which Enright highlighted other physical elements, such as the retaining wall and seawall.  Enright merely added colored lines to the survey, without altering any of the structures depicted on the survey.

all, let alone small attached structures that may have been present. The 2005 aerial photograph is a color image, with much sharper detail. However, the northeastern side of the houses shown in the photograph are cast in extreme shadow, again making it nearly impossible to discern whether there is a deck on the northern side of plaintiff's house. The color in the 2006 aerial photograph is distorted, with parts of the image, including the area showing the subject properties, appearing in black and white. The photo was again taken at a time of day when much of the disputed area is in shadow. Later aerial photographs from 2015 and 2017 were also cited by the trial court, but they have similar shortcomings in terms of color distortion and grainy images.

Despite the deference generally afforded factual findings on appeal, we are left with a definite and firm conviction that the trial court was mistaken when it found there was no deck in 2005. The vast majority of the relevant evidence suggests that the deck existed in some form at that time, such that the weight the trial court gave to the limited evidence to the contrary is simply inexplicable. In addition to the exhibits and testimony already discussed above, the trial court's finding also ignored the hand-drawn survey in plaintiff's 1994 mortgage report, which depicts a 4-foot, square-shaped deck extending from plaintiff's house toward defendants' property. Although the mortgage report shows the deck as falling entirely within plaintiff's property, the architectural drawings that were superimposed on the Richmond survey indicate that the northern-most portion of the deck crossed the boundary line. Coupled with Provo's testimony regarding his recollection of a small platform protruding from the house while it was owned by the Johanssons, this evidence further supports the conclusion that the trial court clearly erred by finding that the deck did not exist before 2005.

On the other hand, the trial court's related finding regarding the absence of the ramp in 2005 was not clearly erroneous. The ramp does not appear in the mortgage report survey, the Richmond survey, or any of the drawings prepared by Enright. Enright testified that if there had been any sort of ground-level access to the deck in 2005, he would expect it to appear on the Richmond survey. Enright indicated that he, too, would have included any existing ramp or stairway in his drawings. Finally, while Provo distinctly recalled a small platform on the side of plaintiff's house before 1994, he testified that there was no railing, support system, ramp, or stairs—it was just a board that extended toward defendants' property. Plaintiff and Kempenaar both indicated that the deck had always been equipped with an access ramp, but the trial court found they generally lacked credibility. Considering the trial court's credibility assessments and the absence of other evidence regarding the presence of a ramp before plaintiff and Kempenaar reconstructed the deck in 2007, the trial court did not clearly err by finding that there was no ramp in 2005.

Plaintiff also asserts that his adverse possession claim was not based solely on the encroaching deck, ramp, and shed. He observes that other landmarks—namely, the landscape timber by the road, the stone retaining wall, and the board by the lake—were continuously in place since plaintiff purchased his property in 1994. The trial court did not make specific findings regarding the implications of these landmarks, but detailed findings on every factual issue are not required. Under MCR 2.517(A)(2), "[b]rief, definite, and pertinent findings and conclusions on the contested matters are sufficient, without over elaboration of detail or particularization of facts." This Court has construed these requirements broadly, explaining that findings are sufficient if "it appears that the trial court was aware of the issues in the case and correctly applied the law, and where appellate review would not be facilitated by requiring further explanation[.]" *Ford Motor*

*Co v Dep't of Treasury*, 313 Mich App 572, 589; 884 NW2d 587 (2015) (quotation marks and citation omitted).

Had the landmarks been placed by plaintiff's predecessors in interest, he could arguably claim that their location on defendants' property was evidence that plaintiff's predecessors placed them in a visible, notorious, and hostile claim of ownership to the disputed area. See *Monroe v Rawlings*, 331 Mich 49, 52; 49 NW2d 55 (1951) (explaining that possession or use must be "of such a character as to openly and publicly indicate an assumed control") (quotation marks and citation omitted); *Wengel*, 270 Mich App 92-93 ("[H]ostile use is that which is inconsistent with the right of the owner, without permission asked or given and which would entitle the owner to a cause of action against the intruder.") (quotation marks and citation omitted). But plaintiff did not present any evidence as to who placed the landmarks. If the landmarks were placed by defendants' predecessors in interest, their location would be entirely consistent with the rights held by the owners of 552 Fernhurst. Consequently, the longstanding presence of the landmarks would have little, if any, relevance to plaintiff's adverse possession claim. Because there was no evidence that the landmarks were placed in an act of open and hostile possession of the disputed area, we cannot fault the trial court for omitting reference to the landmarks in its findings or declining to give the landmarks weight for purposes of plaintiff's adverse possession claim.

Plaintiff also points to his maintenance of the disputed area as evidence supporting his adverse possession claim. Plaintiff argues that the trial court erred by indicating that his maintenance of the area had to be "exclusive as far as preventing S & G or the prior owners from using it as well." Plaintiff's argument again addresses statements found in the trial court's order granting summary disposition to S & G, rather than its ruling following the bench trial. The trial court did not make a similar finding after trial, so plaintiff's argument is entirely misplaced for purposes of this appeal. Concerning the issue of maintenance, the trial court's opinion and order said only that "(1) the planting of ground cover that spread over to the Haase Defendants' property does not establish conduct leading to a claim of ownership given that the Haase Defendants could have assumed that the prior owners of their property planted it; (2) the cutting of grass does not establish conduct sufficient to assert ownership; and (3) raking the area with the ground cover does not establish conduct to assert ownership."[6] The trial court did not err in this regard.

While there is no standard definition of what constitutes open and notorious possession of another's property, that requirement generally refers to acts that plainly show that the property rights of the true owner are being invaded. See *Ennis v Stanley*, 346 Mich 296, 301; 78 NW2d 114 (1956) (stating that absent actual knowledge of hostile claim, "the possession must be so open, visible, and notorious as to raise the presumption of notice to the world that the right of the true owner is invaded"), quoting *McVannel v Pure Oil Co*, 262 Mich 518, 525; 247 NW 735 (1933) (quotation marks omitted). Although plaintiff and Kempenaar testified that plaintiff was the only person to maintain the disputed area, the court found their testimonies generally unworthy of belief. Plaintiff offered no evidence as to the frequency of his mowing, planting, and weeding, and he conceded that he did nothing to maintain the "nature area" adjacent to his deck and ramp.

---

[6] The above-quoted statement was included in the trial court's analysis of plaintiff's acquiescence claim.

In addition, several of plaintiff's claimed maintenance activities were undermined on cross-examination. For instance, he initially testified that he planted lilies in the disputed area, only to acknowledge on cross-examination that his lilies were situated on his own property, even according to the legal boundary line marked by Kieft. Plaintiff also referred to planting myrtle as ground cover near the landscape timber, but later had to concede that the myrtle would have naturally spread on its own. The trial court may have viewed this concession as implying that plaintiff's involvement with the myrtle was less significant than he would have initially had the court believe. Provo testified that he never saw plaintiff, or anyone else, doing anything in the disputed area, and Greg opined that the overgrown condition of the disputed area in 2012 suggested that it was not maintained with any regularity. Giving due deference to the trial court's factual findings and credibility determinations, we are not convinced that the trial court clearly erred in its assessment of plaintiff's sporadic maintenance activities.

In sum, the only finding reached by the trial court that was clearly erroneous was its determination that plaintiff's deck did not exist in any form until sometime after 2005. It appears that the trial court rejected plaintiff's adverse possession claim because it believed that the only encroaching structures, the rebuilt deck and the ramp, had not been present on defendants' property for at least 15 years. In other words, the trial court's limited findings and conclusions imply that it found the duration element of plaintiff's claim lacking. But possession for the 15-year statutory period is but one aspect of adverse possession. Plaintiff also bore the burden of establishing that his possession was actual, visible, open, notorious, exclusive, continuous, and uninterrupted, *Kipka*, 198 Mich App at 439, and hostile, *Wengel*, 270 Mich App at 92-93. The trial court's scant findings and analysis leave it unclear whether the court would have ruled in plaintiff's favor with respect to the area beneath the deck but for its mistaken factual finding, and we decline to decide questions of fact regarding other elements of adverse possession for the first time on appeal. Accordingly, we reverse the portion of the trial court's order concerning the erroneous finding, as well as its conclusion that plaintiff had not established adverse possession, and remand for further findings consistent with this opinion.

## IV. ACQUIESCENCE

Next, plaintiff argues that the trial court erred by dismissing his acquiescence claim when there was undisputed evidence concerning a tacit agreement between plaintiff and defendants' predecessors to recognize a boundary line marked by the landscape timber near the street, the stone retaining wall, and a board near the lake. We disagree.

This Court summarized the general principles of acquiescence as follows in plaintiff's first appeal:

> Under Michigan law, parties may acquiesce to a new property boundary line. *Walters v Snyder*, 239 Mich App 453, 456-457; 608 NW2d 97 (2000). "[A]cquiescence is established when a preponderance of the evidence establishes that the parties treated a particular boundary line as the property line." *Mason v City of Menominee*, 282 Mich App 525, 529-530; 766 NW2d 888 (2009) (quotation

marks and emphasis omitted).[7]  The three theories of acquiescence include: "(1) acquiescence for the statutory period; (2) acquiescence following a dispute and agreement; and (3) acquiescence arising from intention to deed to a marked boundary."  *Sackett v Atyeo*, 217 Mich App 676, 681; 552 NW2d 536 (1996).  At issue here is the first theory—acquiescence for the statutory period.  The statutory period for acquiring property by acquiescence is 15 years.  MCL 600.5801(4); *Mason*, 282 Mich App at 529.  A claim of acquiescence for the statutory period requires a showing that the property owners treated a boundary line as the property line for 15 years.  *Walters*, 239 Mich App at 457-458; see also *Waisanen v Superior Twp*, 305 Mich App 719, 733; 854 NW2d 213 (2014); *Killips* [*v Mannisto*], 244 Mich App [256,] 260[; 624 NW2d 224 (2001)] ("The doctrine of acquiescence provides that where adjoining property owners acquiesce to a boundary line for at least fifteen years, that line becomes the actual boundary line.").  Our Supreme Court has repeatedly held that a boundary line long acquiesced in and treated as the true line should not be disturbed on the basis of new surveys.  *Johnson v Squires*, 344 Mich 687, 692; 75 NW2d 45 (1956).

"The acquiescence of predecessors in title can be tacked onto that of the parties in order to establish the mandated period of fifteen years."  *Killips*, 244 Mich App at 260.  Unlike adverse possession, a claim of acquiescence does not require that possession of the land was hostile or without permission.  *Walters*, 239 Mich App at 456.  In *Wood v Denton*, 53 Mich App 435, 439-440; 219 NW2d 798 (1974), this Court explained that "[o]nly when there has been some agreement, whether tacit or overt, as to the location of the boundary does the question of acquiescence become important."  The underlying reason for the rule of acquiescence is the promotion of peaceful resolution of boundary disputes.  *Killips*, 244 Mich App at 260. [*MacMillan*, unpub op at 14-15.]

The trial court rejected plaintiff's acquiescence claim, reasoning that there was no evidence that defendants or their predecessors treated the landmarks between the properties as though they represented the boundary line.  More specifically, the trial court noted the lack of evidence that defendants or their predecessors knew about plaintiff's activities in the disputed area.  The trial court also found that plaintiff's maintenance and landscaping were not sufficient assertions of ownership.  Extending the trial court's observations a step further, it appears that the trial court rejected plaintiff's tacit-agreement theory because his occasional maintenance of the disputed area was not the sort of activity that would ordinarily cause defendants' predecessors to object, such that acquiescence could not be inferred from their silence.  The trial court's opinion regarding the inferences arising from the evidence was not clearly erroneous.

Plaintiff testified that he had recognized a boundary between the properties marked by the landscape timbers, retaining wall, and board near the lake on defendants' property since he first

---

[7] *Mason* and *Waisanen v Superior Twp*, 305 Mich App 719, 733; 854 NW2d 213 (2014), were superseded on other grounds by the Legislature's amendment of MCL 600.5821.  See 2016 PA 52, Eff. June 20, 2016.

acquired 548 Fernhurst. Considering it to be his own property, plaintiff maintained the area south of these landmarks by mowing the grass, weeding, trimming trees, and planting flowers. Plaintiff testified that he did these activities for at least 15 years, from 1994 to 2009. Plaintiff said he had never seen anyone else maintaining the area and received no objections to his activities or the placement of his deck, ramp, and shed until defendants obtained the Kieft survey in 2014. Plaintiff never spoke with anyone about the location of the boundary line before Greg raised the issue in 2014. Plaintiff's belief regarding the location of the boundary line stemmed from his own understanding and the locations of the landmarks, rather than any affirmation from his neighbors.

Plaintiff's testimony evinced his own belief as to the location of the boundary, but it did not necessarily reflect a similar belief held by defendants or their predecessors, nor did it suggest that any of the owners or occupants of 552 Fernhurst passively accepted plaintiff's opinion. Plaintiff relies on *Killips*, 244 Mich App at 260-261, in support of his contention that the trial court should have found a tacit agreement because the evidence demonstrates there was no objection to his use of the disputed area for the statutory period. But *Killips* is clearly distinguishable. In that case, a portion of the plaintiffs' driveway was built on the defendant's property. *Id*. at 258.

> [P]laintiffs and their predecessors actively used the driveway since approximately 1975. During that time defendant did nothing to stop the usage, despite her belief that the original easement had terminated. In fact, defendant approached her neighbor in 1982 about moving the driveway and the neighbor asserted that the right to use the driveway was permanent. From 1982 forward, defendant did nothing to stop plaintiffs or their predecessors from using the driveway. While defendant marked the boundary with markers, these survey stakes did not block the driveway or otherwise interfere with plaintiffs' use. Plaintiffs and their predecessors used and apparently maintained the driveway during this entire post-1982 period. [*Id*. at 260-261.]

Importantly, it was beyond dispute that the defendant in *Killips* was aware that the plaintiffs and their predecessors were using a portion of her property as if it were their own, but made no attempt to protect her rights to the disputed area. Instead, she remained silent, even after the plaintiffs' predecessor explicitly claimed a permanent interest in the disputed area. *Id*.

In sharp contrast to *Killips*, plaintiff presented no evidence that defendants' predecessors were aware that plaintiff was maintaining the disputed area south of the landmarks or that he viewed the disputed area as part of his property. Absent some reason to believe that plaintiff's maintenance was undertaken as an assertion of ownership, as opposed to a kind, neighborly gesture, the lack of objection carries far less weight as evidence of a tacit agreement to plaintiff's possession or use of the property. Thus, the trial court did not clearly err by finding plaintiff had not established an agreed-upon boundary for a 15-year period.

## V. LAW OF THE CASE

Lastly, plaintiff argues that the trial court violated the law-of-the-case doctrine by failing to follow the remand directives contained in this Court's opinion regarding plaintiff's first appeal. Plaintiff contends that the trial court ignored this Court's earlier opinion by mischaracterizing the exhibits, failing to give weight to his maintenance and landscaping activities as evidence of adverse

possession, and failing to address a tacit-agreement theory of acquiescence. Plaintiff also argues, in essence, that the trial court should not have relied on its negative assessment of his credibility after this Court indicated that plaintiff's testimony was sufficient to establish his claims of adverse possession and acquiescence. We disagree.

"Under the law of the case doctrine, 'if an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same.' " *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 302 Mich App 7, 16; 837 NW2d 686 (2013), quoting *CAF Investment Co v Saginaw Twp*, 410 Mich 428, 454; 302 NW2d 164 (1981). An appellate court's decision is also binding on the trial court on remand. *Grievance Administrator v Lopatin*, 462 Mich 235, 260; 612 NW2d 120 (2000).

Plaintiff's position reflects a fundamental misunderstanding of the law-of-the-case doctrine and his burden of proof at the relevant stages of the lower court proceedings. Plaintiff's first appeal challenged the trial court's grant of summary disposition under MCR 2.116(C)(10), which tests the factual sufficiency of a claim. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). Summary disposition is appropriate only when there is no genuine issue of material fact. *Id*. When the trial court considers whether a material question of fact exists, it must view the evidence in the light most favorable to the nonmoving party. *Id*. "The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). This Court's reversal of the trial court's summary disposition ruling rested largely on the trial court's failure to properly apply these principles. *MacMillan*, unpub op at 16. To explain the error in the trial court's ruling, this Court cited testimony and evidence which, *if believed*, could support plaintiff's adverse possession and acquiescence claims. This Court's recognition of conflicting evidence, however, was by no means a determination that plaintiff had proved his claims beyond dispute.

Appellate review of factual matters following a trial is drastically different. Trial is the time for factual questions to be decided by a judge or jury, such that conflicts in the evidence no longer warrant reversal. To the contrary, the judgment reached by the trier of fact will not be disturbed on the basis of disputed factual matters unless the findings are clearly erroneous. *Chelsea Investment Group*, 288 Mich App at 250. Simply put, the law-of-the-case doctrine is not implicated because the trial court did not attempt to decide an issue resolved by this Court anew. *Zaremba Equip*, 302 Mich App at 16. In plaintiff's first appeal, the question was whether plaintiff established a question of fact to be resolved at trial. On remand, the question was whether plaintiff actually established adverse possession by clear and cogent proof or acquiescence by a preponderance of the evidence. *Killips*, 244 Mich App at 260. A mere question of fact would no longer suffice. While plaintiff's testimony and other supporting evidence may have been adequate to avoid summary disposition, the trial court was not precluded from finding those same proofs unpersuasive in its role as fact-finder.

For the reasons stated in Part III of this opinion, we reverse the trial court's April 19, 2019 opinion, order, and judgment to the extent the court found that no deck existed on the northern side

of plaintiff's house in 2005 and remand for further findings regarding plaintiff's adverse possession claim.  In all other respects, we affirm.  We do not retain jurisdiction.


/s/ Colleen A. O'Brien
/s/ Jane M. Beckering
/s/ Thomas C. Cameron